698 F.2d 1337
 1 Soc.Sec.Rep.Ser. 144
 SAINT MARY OF NAZARETH HOSPITAL CENTER, Plaintiff-Appellant,
v.
DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,
Defendants-Appellees.
ST. JAMES HOSPITAL, Plaintiff-Appellee,
v.
Richard S. SCHWEIKER, Secretary of the Department of Health
and Human Services, Defendant-Appellant.
 Nos. 82-1237, 82-1253.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 27, 1982.
Decided Feb. 1, 1983.
As Amended Feb. 4, 1983.
Rehearing and Rehearing En Banc Denied April 1, 1983.
 
 Leonard C. Homer, Ober, Grimes & Shriver, Baltimore, Md., for plaintiffs-appellants/appellees.
 Katherine S. Gruenheck, Dept. of Justice, Civ. Div., Washington, D.C., for defendants-appellees/appellants.
 Before BAUER and COFFEY, Circuit Judges, and WISDOM,* Senior Circuit Judge.
 COFFEY, Circuit Judge.
 
 
 1
 This appeal is the consolidation of two conflicting district court decisions challenging the payment of Medicare funds to hospitals in reimbursement of Medicare's percentage of the costs incurred by hospitals in rendering medical care to indigents in fulfillment of the hospitals' obligations to the federal government as recipients of Hill-Burton funds. In Saint Mary of Nazareth Hospital Center v. Department of Health and Human Services, 531 F.Supp. 419 (N.D.Ill.1981), the district court granted the defendant's motion for summary judgment on the grounds that the plaintiff hospital was not entitled to Medicare reimbursement for the percentage allocated to Medicare of the free care the hospital provided to indigents in fulfillment of its obligation under the Hill-Burton Act, while in the St. James Hospital v. Harris[1] case, 535 F.Supp. 751 (N.D.Ill.1981), the court granted the plaintiff hospital's motion for summary judgment on the grounds that the hospital was entitled to such reimbursement. The St. James Hospital court also found that a bedside telephone furnished by a hospital was not a "personal comfort item" and thus the Secretary erred when he ruled that 42 C.F.R. Sec. 405.310(j)[2] controlled and prohibited reimbursement of the costs the hospital incurred in furnishing bedside telephones to Medicare patients. We affirm Saint Mary of Nazareth Hospital v. Dept. of Health and Human Services, and reverse St. James Hospital v. Harris.
 
 
 2
 Saint Mary of Nazareth Hospital, located in Chicago, Illinois, is a 490 bed acute care general hospital and was rated qualified by the Secretary of the United States Department of Health and Human Services as a provider of medical services under the provisions of the Social Security Act relating to the Medicare program. 42 U.S.C. Sec. 1395 et seq. (1976). Qualified hospital providers such as Saint Mary's are entitled to reimbursement for the reasonable costs of providing medical treatment to those qualified for Medicare benefits under the Social Security Act, as defined in the Secretary's regulations. 42 U.S.C. Secs. 1395f(b), 1395x(v)(1)(A) (1976). A private health insurance organization (Blue Cross/Blue Shield) acting as a "fiscal intermediary"[3] initially analyzes the Medicare cost reports submitted by hospitals, and after review of these cost reports, allows or disallows the costs claimed to have been incurred by the hospitals and reimburses the health care providers for the "reasonable cost" of the services rendered to Medicare beneficiaries. 42 C.F.R. Sec. 405.401(c). In 1974 Saint Mary's entered into a contract with the federal government and received funds under the Hill-Burton Act to construct its present facility.[4] The Secretary's regulations implementing the Hill-Burton Act require that, in repayment of the grant, participating hospitals provide a percentage of free medical care and services to indigent persons residing in the hospitals' "territorial area," 42 U.S.C. Sec. 291c(e), based on one of the following three formulas: not less than the lesser of (1) 10% of all federal assistance received under the Hill-Burton Act; or (2) 3% of the hospital's net operating costs. As a third alternative, the hospital could elect to adopt the "open door" policy and provide care to all local indigents who are admitted to the hospital and in need of medical care or treatment. 42 C.F.R. Sec. 53.111. Saint Mary's elected to provide uncompensated care under the 10% formula and for the fiscal years 1977 and 1978 Saint Mary's provided free care to indigents amounting to $120,656 and $180,065 respectively. Saint Mary's then sought to have the Medicare program reimburse the hospital for the costs they incurred in fulfillment of their Hill-Burton obligation to indigents. The fiscal intermediary denied Medicare reimbursement of the "costs" claimed for the rendering of free care to indigents arising out of Saint Mary's Hill-Burton obligation. The Provider Reimbursement Review Board[5] upheld the decision of the fiscal intermediary. Thereafter, the Deputy Administrator of the Health Care Financing Administration acting for and on behalf of the Secretary of the Department of Health and Human Services declined to review the Provider Reimbursement Review Board's finding and thus the Board's administrative decision became final.
 
 
 3
 On May 18, 1981 St. Mary's Hospital brought this action and sought judicial review of the Provider Reimbursement Review Board's decision pursuant to 42 U.S.C. Sec. 1395oo(f). The parties (Saint Mary's Hospital and the Secretary of the Department of Health and Human Services) each filed cross motions for summary judgment and the district court granted the Secretary's motion for summary judgment while denying Saint Mary's motion. In granting the Secretary's motion for summary judgment Judge McGarr ruled that Congress, in adopting the Medicare legislation did not intend to reimburse hospitals with Medicare funds for the expenses they incurred in providing a percentage of free services to indigents in repayment of their contractual financial obligation to the government as recipients of Hill-Burton funds. Agreeing with the rationale of the Provider Reimbursement Review Board, the court found that since the hospital had already received compensation for the free care it rendered to indigents under the Hill-Burton Act, if the federal government was now required to again pay for these free medical services to indigents with Medicare funds, the net result would be to "compensate the [hospital] a second time for those costs which the government has already paid." Citing Gaston Memorial Hospital v. Blue Cross, PRRB No. 81-D84 (September 11, 1981). The court recited that it strained the bounds of logical reasoning to believe that Congress would require hospitals to provide a certain amount of free health care to indigents as compensation for receiving federal funds from one program and then reimburse the hospital with federal funds from another program for the obligation it originally incurred in accepting the Hill-Burton federal grant. Thus, the court upheld the Provider Reimbursement Review Board's ruling that the cost of providing free care to indigents pursuant to the hospital's Hill-Burton obligations was not a reimbursable expense under the Medicare program.
 
 
 4
 St. James Hospital, located in Chicago Heights, Illinois, is also a general hospital the Secretary of the United States Department of Health and Human Services found to be qualified as a provider of medical services under the Medicare program and thus entitled to reimbursement for the "reasonable costs" of providing health care services to qualified Medicare beneficiaries. 42 U.S.C. Sec. 1395 et seq. (1976). St. James Hospital also received Hill-Burton grants[6] and elected to participate in the 10% formula for partial repayment of these grants. In 1977, in fulfillment of its Hill-Burton obligation St. James provided free medical care to indigents in the amount of $159,300. St. James' administrator calculated the percentage of the hospital's overall operating expenses as represented by Medicare patients and sought reimbursement from the Medicare program for this percentage of the hospital's cost of providing uncompensated care to indigents. St. James contends that its obligation to perform a percentage of free services to indigents under the Hill-Burton Act was a proper cost arising out of a financial transaction, and was akin to interest on a loan and therefore reimbursable under the Medicare program. The fiscal intermediary, in disallowing reimbursement, ruled that the Hill-Burton obligation to provide a percentage of uncompensated medical care to indigents represented "charity allowances" and thus had "no relationship to beneficiaries of the health insurance program [Medicare] and are not allowable costs." 42 C.F.R. Sec. 405.420(g). The Provider Reimbursement Review Board agreed with the findings of the fiscal intermediary that the cost of providing free care to indigents was a "charity allowance," and Congress never intended to allow participating hospitals to "charge back" this "obligated charity cost" to the Medicare program.
 
 
 5
 During the same 1977 fiscal year, St. James Hospital decided to furnish bedside telephones to all hospital patients, including Medicare recipients. In their annual report to the fiscal intermediary and in order to comply with the Secretary's regulations St. James entered the cost of this "personal comfort item" on worksheet A-8 of the 1977 Medicare Costs Report. The effect of this worksheet (A-8) entry acted as a "self-disallowance" of the overall patient telephone costs ($17,000) and thus the question of the telephone costs was not presented to the fiscal intermediary for review. St. James, at a later date, reconsidered this telephone cost reporting technique of "self-disallowance" and raised the issue and sought reimbursement for the cost of telephone service for the first time on its appeal to the Provider Reimbursement Review Board (PR Review Board). The PR Review Board consolidated St. James Hospital's appeal with that of a number of Florida hospitals on the issues of the telephone costs reimbursement and the disallowance of the percentage of free indigent care allocated by the hospitals to Medicare.
 
 
 6
 After a hearing on St. James' claim for patient telephone costs, the Board held that:
 
 
 7
 "this Board does not have the authority to rule on coverage issues and is locked into the Regulation that states that the patient telephone is a luxury item.
 
 
 8
 The Board finds that the controlling Regulations and Program Policy require the exclusion from allowable costs of all costs associated with telephone services and other personal comfort items which are used for the convenience of patients."
 
 
 9
 When the Board's decision on both questions became final, St. James filed suit in the Northern District of Illinois pursuant to 42 U.S.C. Sec. 1395oo(f) asking for review of the decision of the Provider Reimbursement Review Board, and the parties filed cross motions for summary judgment.
 
 
 10
 In granting the plaintiff St. James Hospital's motion for summary judgment, Judge Leighton reasoned that the fiscal intermediary and the Board erred as a matter of law when they classified the rendering of a percentage of free medical services pursuant to the Hill-Burton obligation as "charity." The court reasoned that because St. James was obligated under its Hill-Burton grant agreement to provide a percentage of free care to indigents, the free care St. James provided indigents should not be considered as "charity." Moreover, the court further stated that the rendering of free services was "no different than costs which the hospital could have been required to pay as interest on the grants it received under the Hill-Burton Act." The court ruled that the Hill-Burton obligation of providing free care was not "charity" and that the Secretary's refusal to set aside the fiscal intermediary's disallowance was tantamount to "an abuse of discretion and not in accordance with law."
 
 
 11
 As to the issue of Medicare's reimbursement of patient telephone costs, the court found the Provider Reimbursement Review Board's decision that they were without jurisdiction to rule on the claim resulted in a "hypertechnical construction of the statute and regulations." The court ruled that the Provider Reimbursement Review Board had jurisdiction to review St. James' self-disallowance because the Board's jurisdiction may be invoked by a provider if the provider is dissatisfied with the amount of total program reimbursement and the amount in controversy exceeds $10,000, regardless of whether the fiscal intermediary was presented with the question of the reimbursement of the telephone costs.
 
 
 12
 Turning to the merits of St. James' claim for reimbursement of the expenses it incurred in furnishing bedside telephones to Medicare patients, the court noted that the telephones were used by both hospital personnel and patients alike. The district court found persuasive the expert medical testimony and clinical studies supporting the theory that bedside telephones had therapeutic value. While noting that the Secretary has broad discretion in adopting regulations governing payment to Medicare providers, the district court went on to find that the Medicare section disallowing reimbursement for "personal comfort items" was not intended to exclude the payment for patient telephones per se. Rather, the court reasoned that it was Congress' intent to exclude such items from coverage if they were required only for the convenience of a patient and had no meaningful relationship to the medical treatment of an illness or an injury or the functioning of a malformed body member. It was the court's decision that a bedside telephone had therapeutic value and was essential to the delivery of health care and therefore the Secretary of Health and Human Services abused his discretion in refusing to reimburse hospitals for the costs incurred in supplying Medicare patients with bedside telephones. The Secretary has appealed from the decision of the district court.
 
 ISSUES PRESENTED
 
 13
 Issue 1: Is the cost of providing a percentage of free care to indigent persons pursuant to a hospital's obligation under the Hill-Burton Act reimbursable under Medicare as a reasonable cost of providing medical services?
 
 
 14
 Issue 2: Did the district court err in ruling that patient bedside telephones are not "personal comfort items" within the meaning of the Medicare Act?
 
 1. Hill-Burton Costs[7]
 
 15
 Subchapter XVIII of the Social Security Act, entitled Health Insurance for Aged and Disabled, authorizes the payment of "reasonable costs" to qualified hospitals that provide medical services to Medicare beneficiaries and directs and empowers the Secretary of Health and Human Services to draft regulations to define and interpret what constitutes "reasonable costs" within the parameters of the Social Security Act. 42 U.S.C. Sec. 1395x(v). On August 17, 1982, Congress passed section 106 of the Tax Equity & Fiscal Responsibility Act of 1982, and the bill became effective September 3, 1982. Section 106 provides:
 
 
 16
 "(a) Section 1861(v)(1) of the Social Security Act [42 U.S.C. Sec. 1395x(v)(1) ] is amended by adding at the end the following new subparagraph:
 
 
 17
 '(M) Such regulations shall provide that costs respecting care provided by a provider of services, pursuant to an assurance under Title VI or XVI of the Public Health Service Act that the provider will make available a reasonable volume of services to persons unable to pay therefore, shall not be allowable as reasonable costs.'
 
 
 18
 (b) The amendment made by subsection (a) shall be effective with respect to any costs incurred under Title XVIII of the Social Security Act, except that it shall not apply to costs which have been allowed prior to the date of the enactment of this Act pursuant to the final court order affirmed by a United States Court of Appeals."
 
 
 19
 Accompanying this provision the Congress included the following statements of congressional intent:
 
 
 20
 "House Committee Provision
 
 
 21
 The House Committee Provision requires the Secretary to provide, by regulation, that the costs incurred by a hospital or skilled nursing facility in complying with its free care obligation under the Hill-Burton Act would not be considered reasonable costs for purposes of Medicare reimbursement. The provision is effective for costs incurred on or after date of enactment.
 
 Conference Agreement
 
 22
 The Conference Agreement includes the House Committee Provision. The provision is intended to clarify that Hill-Burton free care costs have never been, and are not, allowable for Medicare reimbursement purposes. The provision, therefore, applies to all such costs that have been, or will be incurred except those recognized by the final judgment of a U.S. Court of Appeals entered into prior to enactment."
 
 
 23
 H.R.Rep. No. 97-160, 97th Cong., 2d Sess. at 431 (8/17/82) (emphasis supplied).
 
 
 24
 From the inception of the Medicare Program, the Secretary has adhered to the intent of Congress that Medicare was established exclusively to reimburse hospitals for the reasonable cost of providing medical treatment to those individuals who qualify as Medicare beneficiaries and not to reimburse hospitals for their charity obligations under the Hill-Burton Act. In response to the congressional mandate contained in section 106, the Secretary adopted regulations revising 42 C.F.R. Sec. 405.420(b)(2), (g), "to state explicitly that uncompensated services furnished in fulfillment of a Hill-Burton free care obligation are considered charity allowances and as such cannot be considered allowable costs in computing Medicare reimbursement for providers." 47 Fed.Reg. No. 191 October 1, 1982 at 43657. In support of his regulation, the Secretary further noted:
 
 
 25
 "This rule is consistent with long standing Medicare policy in this area, and, as noted in the preceding section of this preamble, is explicitly required by Sections 1861(v)(1) of the Act (as amended by Section 106 of Pub.L. 97-248). We believe this change will clarify our regulations and prevent further disputes with providers and others on this issue....
 
 
 26
 Section 106 of Pub.L. 97-248 is effective with respect to all costs incurred under Medicare, both before and after enactment of the amendment, except those specific costs allowed under court order in the Presbyterian Hospital decision. Consequently, this rule is applicable to all past disputes concerning Medicare disallowances of costs of free care furnished under a Hill-Burton obligation except those cost years specifically litigated in the Presbyterian Hospital case, as well as future treatment of these costs. Any Hill-Burton costs paid by Medicare under the principle of the Presbyterian decision, but not specifically litigated therein, are impacted by this statutory amendment. These cost reports will be reopened and the Hill-Burton free care costs will be disallowed."
 
 
 27
 Id.
 
 
 28
 Saint Mary's and St. James' Hospitals challenge the congressional amendment and the subsequent regulations promulgated by the Secretary on the grounds that these governmental actions repudiate the hospitals' vested contractual rights to Medicare reimbursement for Hill-Burton indigent care costs and thus constitute a taking of property without just compensation in violation of the fifth amendment. Moreover, the hospitals assert that all patients should share proportionately in defraying the costs of providing the free care to indigents pursuant to the Hill-Burton Act because all patients benefit from the hospitals' use of Hill-Burton funds. Since the Secretary requires hospitals to accept Medicare patients if they previously received Hill-Burton funds and now refuses to reimburse those hospitals for the Medicare patients' share of the Hill-Burton charity care costs, the hospitals assert that they are being forced to operate at a loss when treating their Medicare patients. However, our review of the Medicare Act and the Hill-Burton Act reveals that these two Acts as established are two separate and distinct federal programs, each designed to accomplish a distinctly different purpose. The Hill-Burton Act was designed to promote the construction and modernization of hospitals, and as a quid pro quo for the receipt of Hill-Burton funds, participating hospitals agreed to provide a percentage of charity care to local indigents. The Medicare Act, on the other hand, was adopted only to provide medical care for the disabled and the aged who qualify as Medicare beneficiaries. It was Congress' intent that these two programs remain separate and apart from each other and that hospitals should not be reimbursed by one program (Medicare) for the care they provide in fulfillment of the other, their Hill-Burton obligations. Thus, it is evident from the legislative history of the two Acts and the Secretary's long standing policy and from the language of the statutes that Congress never intended to allow the Medicare program to reimburse hospitals for a percentage of their annual Hill-Burton free care costs.
 
 
 29
 To date, two circuit courts of appeals have addressed the application of section 106 of the Tax Equity and Fiscal Responsibility Act of 1982. In Harper-Grace Hospitals v. Schweiker, 691 F.2d 808 (6th Cir.1982), the Sixth Circuit applied section 106 and in doing so affirmed the decision of the district court that the costs of providing free care to indigents pursuant to the hospital's obligation as a recipient of Hill-Burton funds were not reimbursable costs under the Medicare Act. However, the court did not address the issue of the constitutionality of section 106, but rather relied upon the general rule that courts must apply the law that is in effect at the time the court renders its decision. See Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).
 
 
 30
 In a recent decision, the Eighth Circuit reversed the finding of the district court and held that the Secretary of the Department of Health and Human Services was correct when he relied on his regulation and denied the hospitals Medicare reimbursement for the costs the hospitals incurred in providing a percentage of free care to local indigents pursuant to the Hill-Burton contractual agreement. Metropolitan Medical Center v. Harris, 693 F.2d 775 (8th Cir.1982). The court declined to rely on the retroactive application of section 106 of the Tax Equity and Fiscal Responsibility Act and instead rested its decision on the fact that the Hill-Burton Act and the Medicare Act embody separate and distinct federal programs and the legislative history of each revealed that Congress never intended to allow the use of Medicare funds to reimburse hospitals for the Medicare percentage of the free care rendered to indigents under the Hill-Burton Act. The court rejected the hospitals' claim that they had a right to Medicare reimbursement for the free care they provide to indigents as recipients of Hill-Burton construction aid because "[t]he text of the Act, its implementing regulations, its legislative history and the case law construing it all [demonstrate] that medicare reimbursement for free care costs is inconsistent with the Hill-Burton Act." Metropolitan Medical Center, 693 F.2d at 782.
 
 
 31
 In another case, Arlington Hospital v. Schweiker, 547 F.Supp. 670 (D.Va.1982), the district court found section 106 constitutionally sound in the face of an attack based upon an uncompensated "taking" within the meaning of the fifth amendment. The court balanced the nature and the strength of the public interest served by section 106 against the nature of the hospital's asserted right to reimbursement and found that the "strength of the public interest involved, and the relative insubstantiality of the plaintiff's interest" required the court to uphold the constitutionality of section 106. Id. at 675. We agree with the overall reasoning of the Sixth and Eighth Circuit Courts and the specific reasoning in the Arlington Hospital case dealing with section 106, and in so ruling we hold that strong public policy outweighs the hospitals' insubstantial interest, and section 106 is clear in that it is nothing more than the reaffirmation of the longstanding policy that it was never the intent of Congress to allow Medicare payments to be used to reimburse hospitals for the percentage of free care they provide indigents in repayment of their obligations under the Hill-Burton Act.
 
 
 32
 To reach any other conclusion would put the government in the anomalous position of acting as a permanent life support system for health care facilities who provide services for the indigent without requiring that the hospitals fulfill the contractual obligations they incurred when accepting Hill-Burton funds. This type of financial reimbursement advocated by the hospitals is totally inconsistent with the principles of the Hill-Burton Act. We believe it is incumbent upon hospital executives to administer their respective hospitals in a fiscally responsible manner, contingent upon the reasonable cost of the services they provide within the limits of the Medicare guidelines. We refuse to permit hospitals to subvert federal aid programs through the use of other federal funds to subsidize the financial dilemma they themselves created.
 
 
 33
 It is well settled "that legislative acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). In analyzing the constitutionality of retroactive legislation, case law suggests that courts undertake a balancing of three factors: (1) the nature of the asserted right that is altered by the legislation; (2) the nature and strength of the public interest served by the legislation; and (3) the extent to which the legislation impairs the asserted interest. See Nachman Corp. v. Pension Benefit Guaranty Corp., 592 F.2d 947, 959-60 (7th Cir.1979).
 
 
 34
 As to the first element, the hospitals' purported right to Medicare reimbursement for Hill-Burton uncompensated care costs was never expressly granted by either statute or regulation. Rather, this alleged right simply arises out of the hospitals' reading of the Medicare Act through rose colored glasses, a reading which is to the hospitals' pecuniary advantage, and the Fifth Circuit's interpretation of the Medicare Act and the Hill-Burton Act. See Presbyterian Hospital of Dallas v. Harris, 638 F.2d 1381, 1382 (5th Cir.1981). However, neither the Harris decision nor the hospitals' reading of the Medicare Act rise to the level of establishing a "vested right" in hospitals to receive Medicare reimbursement for Hill-Burton uncompensated care costs, but merely represents a "hospital administrator's dream" and the wild expectation that hospitals should now receive even more government money for the services they have previously contractually agreed to provide to indigents in repayment of their Hill-Burton grants. There is not a scintilla of proof in this record that Congress ever intended the Medicare program to reimburse hospitals for the Medicare percentage of the cost of providing medical care pursuant to their Hill-Burton obligations.
 
 
 35
 The public interest to be served by section 106 is evident from our review of the legislative history of that section. Congress was acting to remedy what it perceived as a misinterpretation of the Medicare Act in recent litigation. There is clearly a strong public interest in the proper interpretation of congressional acts, and the adoption of section 106 by Congress was merely to clarify an already accepted fact that Medicare was never intended to provide hospitals with a second cash payment for the care they provide local indigents and is necessary to eliminate "windfalls from an unexpected judicial decision." C. Hochman, The Supreme Court and Constitutionality of Retroactive Legislation, 79 Harv.L.Rev. 692, 705 (1960). Furthermore, public policy supports the application of section 106 because to allow hospitals to use one federal program to fund their obligations under another in an attempt to "charge back" their excess costs to the government runs contrary to a reasonable reading of the two Acts. Therefore, we hold that section 106 is constitutional.
 
 2. Bedside Telephone
 
 36
 Before reaching the merits of the district court's decision that patient bedside telephones are not "personal comfort items" within the meaning of the Medicare Act, we must first determine whether the district court had jurisdiction to decide the question. 42 U.S.C. Sec. 1395oo(g) states:
 
 
 37
 "[t]he finding of a fiscal intermediary that no payment may be made under this subchapter for any expenses incurred for items or services furnished to an individual because such items or services are listed in section 1395y of this title shall not be reviewed by the Board, or by any court pursuant to an action brought under subsection (f) of this section."
 
 
 38
 The Secretary contends that the courts do not have jurisdiction over the telephone cost reimbursement issue because the fiscal intermediary disallowed the cost of patient bedside telephones on the grounds they are "personal comfort items." Because the term "personal comfort item" is "listed in section 1395y," the Secretary asserts that section 1395oo(g) restricts the jurisdiction of the courts in the following language: "The finding of the fiscal intermediary ... shall not be reviewed by the Board, or by any court ...." However, we do not agree with the Secretary's position that the telephone reimbursement cost issue cannot be reviewed by the courts. There is no definition or description of the term "personal comfort item" in the statute, and therefore, pursuant to his statutory duty and authority, the Secretary adopted regulations and interpreted the term "personal comfort item" to include personal telephones. Thus, we are faced only with a challenge to the Secretary's interpretation contained in his regulations of the term "personal comfort item." Contrary to the Secretary's position, section 1395oo(g) does not restrict this court's jurisdiction to review the Secretary's interpretation of what a personal comfort item consists of.
 
 
 39
 In a second challenge, the Secretary also contends that the Provider Reimbursement Review Board was without jurisdiction to act upon St. James Hospital's claim for reimbursement of the cost of bedside telephones because the hospital itself had "self-disallowed" the costs when they filed worksheet A-8 of their Medicare Costs Report. The Secretary takes the position that the relevant statutes require an initial presentation of the question of the reimbursement of telephone costs to the fiscal intermediary before the hospital is entitled to a hearing by the Provider Reimbursement Review Board. 42 U.S.C. Sec. 1395oo(d) provides that:
 
 
 40
 "The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination." (Emphasis supplied).
 
 
 41
 This section vests broad authority in the Provider Reimbursement Review Board to review the finding of the fiscal intermediary and make any adjustment to the cost reports the Board deems necessary. As the statute itself expressly states, the Board may consider any matter "even though such matters were not considered by the intermediary in making such final determination." 42 U.S.C. Sec. 1395oo(d). Therefore, since the statute allows the Board to consider matters outside of the cost reports, we hold the Provider Reimbursement Review Board had the authority to consider whether the costs of providing Medicare patients with bedside telephones are reimbursable expenses under the Medicare Act.
 
 
 42
 Reaching the merits of the court's decision to overrule the Secretary and order reimbursement under the Medicare Act of the cost of providing Medicare patients with bedside telephones, we initially note that 42 U.S.C. Sec. 1395hh grants the Secretary the broad discretionary power to "prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter." While Congress has mandated that no payment may be made for items "which constitute personal comfort items," 42 U.S.C. Sec. 1395y(a)(6), Congress did not define the term "personal comfort item." Therefore, the Secretary of the Department of Health and Human Services, as the Administrator of the Medicare Program had the duty to draft and implement the following regulation defining the term "personal comfort item:"
 
 
 43
 "no payment may be made for any expenses incurred for the following items or services:
 
 
 44
 * * *
 
 
 45
 * * *
 
 
 46
 (j) Personal Comfort Items and Services (for example a television set, or telephone service, etc.);"
 
 
 47
 42 C.F.R. Sec. 405.310.
 
 
 48
 It is the duty of the courts to interpret congressional acts, and though courts are not bound by interpretative regulations such as section 405.310, Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944), courts will defer to the agency's judgment unless it can be shown that the agency's determination was arbitrary and capricious or constituted an abuse of discretion. 5 U.S.C. Sec. 706(2)(A). See also Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). As recently stated by the Supreme Court, "there certainly is no reason to think judges or juries are better qualified than appropriate professionals in making such decisions. See Parham v. J.R., 442 U.S. 584, 607, 99 S.Ct. 2493, 2506-2507, 61 L.Ed.2d 101 (1979); Bell v. Wolfish, supra, 441 U.S. at 544, 99 S.Ct. [1861] at 1877 [60 L.Ed.2d 447] (Courts should not ' "second-guess the expert Administrator on matters on which they are better informed." ')." Youngberg v. Romeo, --- U.S. ----, ----, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982). The Secretary's regulation banning the reimbursement of the cost of a telephone used for a Medicare patient's personal comfort is clearly authorized by 42 U.S.C. Sec. 1395y(a)(6). Since the Secretary has the broad authority to adopt regulations within the confines of the stated congressional intent, and because St. James has failed to show that the Secretary abused his discretion in determining that bedside telephones are personal comfort items, we hold that the cost of providing a Medicare patient with a bedside telephone is not a reimbursable cost under the Medicare program.
 
 
 49
 In sum, we defer to the professional expertise of the Secretary of the Department of Health and Human Services, and in doing so we uphold the Secretary's determination to exclude from Medicare reimbursement the "average cost" of each telephone supplied to a Medicare beneficiary and we further hold that the Secretary's regulation which prohibits the reimbursement of hospitals for bedside telephones provided as personal comfort items to Medicare patients is valid and enforceable.
 
 
 50
 As pointed out earlier, we hold that section 106 of the Tax Equity and Fiscal Responsibility Act of 1982 which prohibits the reimbursement by Medicare of costs incurred by the provider hospitals in fulfillment of their obligation to provide a percentage of free care to indigents under the Hill-Burton Act is constitutional and thus, we affirm the decision of Saint Mary of Nazareth Hospital v. Department of Health and Human Services, and reverse St. James Hospital v. Schweiker.
 
 
 
 *
 The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation
 
 
 [1]
 In a footnote, the court noted:
 "Patricia Roberts Harris, who is here sued only in her official capacity, has been succeeded in office by Richard S. Schweiker. However, for literary reasons, there having been no motion for substitution, the court has treated the case as against the Secretary during whose term of office this controversy arose. Under the circumstances, by operation of law, the substitution is automatic; and the judgment in this case is against the current incumbent who becomes the named defendant. See Bracco v. Lackner, 462 F.Supp. 436 (N.D.Cal.1978); Fed.R.Civ.P. Rule 25(d), 28 U.S.C.A."
 
 
 [435]
 F.Supp. at 765 n. 1. For the purpose of this appeal, the current Secretary has been substituted for Ms. Harris
 
 
 [2]
 42 C.F.R. Sec. 405.310(j) states:
 "no payment may be made for any expenses incurred for the following items or services:
 * * *
 (j) Personal comfort items and services (for example a television set, or telephone service, etc.);"
 
 
 [3]
 Medicare providers are usually reimbursed for the reasonable cost of care the hospitals render to Medicare beneficiaries by private organizations acting as "fiscal intermediaries" pursuant to contracts with the Secretary. 42 U.S.C. Sec. 1395h. It is the fiscal intermediary's responsibility to ascertain the amount of reimbursable "reasonable cost" in accordance with regulations promulgated by the Secretary. At the end of the hospitals' fiscal years, the participating hospitals must submit cost reports to the fiscal intermediary documenting the "reasonable costs" provided to Medicare beneficiaries. 42 C.F.R. Sec. 405.406(b). As the liaison between the government and the provider hospitals the fiscal intermediary determines whether the hospitals are acting in a fiscally responsible manner and undertakes an analysis of the cost reports. 42 C.F.R. Sec. 1803. After reimbursing the provider hospitals for the reasonable costs of the medical treatment the hospitals rendered to Medicare beneficiaries pursuant to the Secretary's regulations, the fiscal intermediary is itself reimbursed by the government
 
 
 [4]
 The Hill-Burton Act, 42 U.S.C. Sec. 291 et seq., was passed in 1946 to assist in the construction and modernization of hospitals and to assure adequate hospital services for all. In order for a participating hospital to receive federal funds under the Hill-Burton Act, the hospital must provide "a reasonable volume of services for persons unable to pay therefor." 42 U.S.C. Sec. 291c(e)
 
 
 [5]
 The Provider Reimbursement Review Board is empowered to conduct a hearing when a provider is not satisfied with and disputes the decision of a fiscal intermediary, if the total amount in controversy is at least $10,000. 42 U.S.C. Sec. 1395oo
 
 
 [6]
 St. James used these funds to modernize its existing facility and to construct new facilities
 
 
 [7]
 For a discussion of the Hill-Burton Act, see note 4, infra