**CATHOLIC MEDICAL CENTER,**
Plaintiff, Appellant,

v.

**NEW HAMPSHIRE–VERMONT HOSPI-
TALIZATION SERVICE, INC., et al.,**
Defendants, Appellees.

No. 82–1808.

United States Court of Appeals,
First Circuit.

Argued March 11, 1983.

Decided May 4, 1983.

Stephen E. Weyl, Manchester, N.H., with whom Daniel N. Gregoire, and Sheehan, Phinney, Bass & Green Prof. Ass'n, Manchester, N.H., were on brief, for plaintiff, appellant.

Patricia S. Hofstra, Richard N. Peterson, Leonard C. Homer, and Ober, Grimes & Shriver, Baltimore, Md., on brief for the American Hosp. Ass'n, amicus curiae.

Jaclyn C. Taner, Office of the General Counsel, Dept. of Health and Human Services, Washington, D.C., with whom Juan A. Del Real, General Counsel, and Ann T. Hunsaker, Asst. General Counsel, Dept. of Health and Human Services, Washington, D.C., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, BREYER, Circuit Judge, and MALETZ,* Senior Judge.

MALETZ, Senior Judge.

The question presented is whether the cost of providing free medical care to indigents under the Hill-Burton Act, 42 U.S.C. §§ 291 *et seq.* (1976), is reimbursable as a proper Medicare indirect cost. To date, four courts of appeals have answered this question in the negative. *Iredell Memorial Hospital, Inc. v. Schweiker,* 699 F.2d 196 (4th Cir.1983); *St. Mary of Nazareth Hospital Center v. Dep't of Health & Human Services,* 698 F.2d 1337 (7th Cir.1983); *Metropolitan Medical Center v. Harris,* 693 F.2d 775 (8th Cir.1982); and *Harper-Grace Hospitals v. Schweiker,* 691 F.2d 808 (6th Cir. 1982), *aff'd on rehearing,* No. 81–1305 (6th Cir. March 23, 1983).[1] We join these circuits and conclude that Medicare reimbursement for Hill-Burton free care costs is specifically prohibited by regulations promulgated by the Secretary of the Department of Health and Human Services (the Secre-

---

* Of the United States Court of International Trade, sitting by designation.

1. The Fifth Circuit has reached the opposite conclusion, holding that such Hill-Burton free care costs are a reimbursable indirect cost under the Medicare Act. *Presbyterian Hospital of Dallas v. Harris,* 638 F.2d 1381, *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981).

tary); and that the reimbursement of those costs would be contrary to the purpose of both the Hill-Burton and Medicare Acts. Accordingly, we affirm the decision of the district court granting the Secretary's motion for summary judgment.[2]

## I

Appellant Catholic Medical Center (CMC), a 264 bed acute care hospital located in Manchester, New Hampshire, received a federal construction subsidy of $246,000 under the Hill-Burton Act. That Act was passed in 1946 to assist in the construction and modernization of hospitals and to assure that adequate hospital services are available. In order for a participating hospital to receive federal funds under that Act, the hospital must provide "a reasonable volume of services for persons unable to pay therefor." 42 U.S.C. § 291c(e). In fulfilling this obligation, a hospital receiving a Hill-Burton subsidy is required by regulation to provide free medical services to indigents in an annual amount not less than 3% of the hospital's total operating costs or 10% of all federal assistance received by the hospital for a twenty-year period. Alternatively, a hospital may satisfy its Hill-Burton obligation by adopting a twenty-year open door policy of providing free care to all qualifying indigents. 42 C.F.R. § 53.111. CMC elected the 10% formula by promising to provide free care to indigent persons in an amount not less than $24,600 annually. During the two fiscal years in issue, 1977

and 1978, CMC provided $30,039.00 and $31,543.00, respectively, in such free care. It is these costs for which CMC here seeks partial reimbursement under the Medicare program, 42 U.S.C. §§ 1395 et seq. (1976).

With respect to the Medicare program, a hospital, such as CMC, rated qualified by the Secretary as a provider of medical services under that program, is entitled to reimbursement for the reasonable costs of providing medical treatment to those qualified for Medicare benefits. 42 U.S.C. §§ 1395f(b), 1395x(v)(1)(A). A private health insurance organization (here, New Hampshire-Vermont Hospitalization Service, Inc.), may act as a "fiscal intermediary," 42 U.S.C. § 1395h, initially analyzing Medicare cost reports submitted by the hospital. After review of these cost reports, the fiscal intermediary either allows or disallows the costs claimed to have been incurred by the hospital and reimburses it for the "reasonable cost" of the services rendered to Medicare beneficiaries. 42 C.F.R. § 405.401(c).

Ascertainment of the reasonable cost of services is governed by 42 U.S.C. § 1395x(v)(1)(A) which provides in part:

The reasonable cost of any services shall be the cost actually incurred, ... and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions,

---

**2.** On September 8, 1982, the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, was enacted. Section 106 of that Act provides:

(a) Section 1861(v)(1) of the Social Security [Medicare] Act is amended by adding at the end the following new subparagraph:

"(M) Such regulations shall provide that costs respecting care provided by a provider of services, pursuant to an assurance under title VI or XVI of the Public Health Service [Hill-Burton] Act that the provider will make available a reasonable volume of service to persons unable to pay therefor, shall not be allowable as reasonable costs."

(b) The amendment made by subsection (a) shall be effective with respect to any costs incurred under title XVIII of the Social Security Act, except that it shall not apply to

costs which have been allowed prior to the date of the enactment of this Act pursuant to the final court order affirmed by a United States Court of Appeals.

The import of this legislation is to bar reimbursement under the Medicare Act of Hill-Burton free care costs. In view of the considerations set out below, we do not reach the question as to whether the retroactive application of this law is constitutional. Cf. Harper-Grace Hospitals v. Schweiker, No. 81–1305, slip op. at 4 (6th Cir. March 23, 1983) (section 106 constitutional); St. Mary of Nazareth Hospital Center v. Dep't of Health & Human Services, 698 F.2d 1337, 1345 (7th Cir.1983) (retroactive application of section 106 constitutional). See also Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 79 Harv.L.Rev. 692 (1960).

agencies, and services; ... Such regulations shall (i) take into account both direct and indirect costs of providers of services ... [so that] the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by [Medicare] ....

CMC claims that Hill-Burton free care services represent an indirect cost of providing care to Medicare patients. It points out that the medical facilities made available through Hill-Burton grants benefit all patients, including those covered by Medicare. Thus, CMC argues that it is entitled to reimbursement under Medicare for Medicare's proportionate share of CMC's free care costs under Hill-Burton. The Secretary denied CMC's claim for such reimbursement, following which CMC sought judicial review. The district court affirmed the Secretary's decision, noting that " 'it would be illogical to obligate hospitals to provide a certain amount of free health care as compensation for receiving federal funds and then reimburse the hospital, again with federal funds, for the obligations incurred through the initial receipt of federal monies'." *Catholic Medical Center v. New Hampshire-Vermont Hospitalization Service, Inc.,* 546 F.Supp. 297, 299 (D.N.H. 1982), *quoting St. Mary of Nazareth Hospital Center v. Dep't of Health & Human Services,* 531 F.Supp. 419, 422 (N.D.Ill.1982), *aff'd,* 698 F.2d 1337 (7th Cir.1983). This appeal followed.

## II

As indicated, the issue here arises out of the interrelationship between the Medicare and Hill-Burton Acts. The two statutes must be construed consistently "to produce a symmetrical whole." *Panhandle Eastern Pipe Line Co. v. Federal Power Commission,* 359 F.2d 675, 679 (8th Cir.1966). Given this consideration, the Secretary contends that the following provisions of the Medicare Act itself bar reimbursement of CMC's Hill-Burton free care costs: first, 42 U.S.C. § 1395x(v)(1)(A) which precludes Medicare reimbursement for the care of non-Medicare patients; second, 42 U.S.C. § 1395y(a)(2) which excludes Medicare coverage where the patient has "no legal obligation to pay"; and, finally, 42 U.S.C. § 1395y(a)(3) which prohibits Medicare reimbursement where the care has already been "paid for directly or indirectly" by another government program. In addition, the Secretary maintains that such Medicare reimbursement is prohibited by the "charity" regulations he has promulgated under the Medicare Act. 42 C.F.R. §§ 405.-402(c)(7), 405.420(b)(2).

CMC, on the other hand, while conceding that Hill-Burton free care recipients are not Medicare beneficiaries and, consequently, that the cost of providing services to them is not a reimbursable direct cost of Medicare, nonetheless argues that such free care expenses are reimbursable indirect costs because they benefit Medicare and non-Medicare patients alike by qualifying the hospital for Hill-Burton construction and modernization assistance. CMC and *amicus* [3] further insist that Hill-Burton free care costs are indistinguishable from interest and depreciation for which reimbursement is expressly permitted by regulation. *See* 42 C.F.R. §§ 405.415–.419.

We agree that Hill-Burton free care costs are an indirect cost for Medicare purposes. *See Presbyterian Hospital of Dallas v. Harris,* 638 F.2d 1381 (5th Cir.), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981). However, we do not agree that such costs are reimbursable under the Medicare program. To begin with, the Medicare Act leaves with the Secretary the responsibility of defining by regulation "indirect costs." 42 U.S.C. § 1395x(v)(1)(A). The Secretary's regulations enumerate reimbursable indirect costs, which include interest and depreciation expenses, *see* 42 C.F.R. §§ 405.415–.419, but make no mention whatever of Hill-Burton free care costs. For accounting purposes the Secretary has

---

**3.** The American Hospital Association has filed a brief *amicus curiae* in this proceeding.

treated interest and depreciation as costs which deplete a hospital's assets. By contrast, there are other costs, such as Hill-Burton free care costs, which merely reduce a hospital's revenue. The Secretary has relied on this distinction to deny Medicare reimbursement for the latter. Thus, his regulations provide that charity care, bad debts, and courtesy allowances are not reimbursable under the Medicare program because they represent reductions in revenue. 42 C.F.R. § 405.420(a) and (b). "The failure to collect charges for services rendered does not add to the cost of providing the services [inasmuch as] [s]uch costs have already been incurred in the production of the services." 42 C.F.R. § 405.420(c). In light of this distinction, it was reasonable for the Secretary to classify Hill-Burton free care costs as a revenue reduction cost, rather than as an asset depletion expense. *See Georgia v. United States,* 411 U.S. 526, 538–41, 93 S.Ct. 1702, 1709–1711, 36 L.Ed.2d 472 (1973).

Moreover, a reading of the Hill-Burton and Medicare Acts shows that Congress intended that participating hospitals would not be reimbursed by Medicare for their Hill-Burton free care obligation. In this connection, the Hill-Burton Act expressly authorizes the Secretary to issue regulations requiring participating hospitals to give assurances that "there will be made available . . . a reasonable volume of services to persons unable to pay therefor." 42 U.S.C. § 291c(e). That same section also provides an exception to the free care assurance "if such a requirement is not feasible from a financial viewpoint." *Id.* Thus, not only does that Act's plain language impose a duty upon hospitals to provide free care to indigents, its financial infeasibility escape clause shows that Congress contemplated that in return for a Hill-Burton grant participating hospitals would have to devote some of their own resources in meeting their Hill-Burton free care obligation, rather than look to the Government for reimbursement. *See* Rosenblatt, *Health Care Reform and Administrative Law: A*

*Structural Approach,* 88 Yale L.J. 243, 267 (1978).

The case law is to the same effect. In *Euresti v. Stenner,* 458 F.2d 1115, 1118–19 (10th Cir.1972), the court stated that "[n]othing could be clearer: In receiving federal funds, [hospitals] obligated themselves to dispense a reasonable amount of free hospital services to those unable to pay." Similarly, in *Cook v. Ochsner Foundation Hospital,* 559 F.2d 968, 972 (5th Cir. 1977), the court commented that "service to indigent patients is a *quid pro quo* exacted in return for the benefaction received from the taxpayers."

The Medicare Act likewise emphasizes that the United States will not provide Medicare reimbursement for costs already subsidized by another federal program. *See* 42 U.S.C. § 1395y(a)(3) (no reimbursement where health care services furnished directly to Medicare patients are paid by a governmental entity). Although this exclusion does not apply expressly to Hill-Burton free care costs, we are of the view that Hill-Burton construction aid is an indirect subsidy to hospitals in exchange for the free care they provide. *See Cook v. Ochsner Foundation Hospital; Corum v. Beth Israel Medical Center,* 359 F.Supp. 909, 912–13 (S.D.N.Y.1973) ("There is no dispute that, under Federal law and by contract, part of the *quid pro quo* for the [Hill-Burton] grant is the requirement that [the hospital] afford poor persons a reasonable amount of free or below cost services." (Footnote omitted.))

What is more, although the "reasonable cost" provision of 42 U.S.C. § 1395x(v)(1)(A)[4] permits recovery of indirect costs incurred in serving Medicare recipients, that same provision expressly proscribes imposing on the Medicare program expenses incurred by non-Medicare patients. This proscription would seem to include Hill-Burton free care patients. However, under the broad definition of "indirect cost" advanced by CMC, virtually any expenditure by a hospital that arguably bene-

4. *See* pp. 8–9, *supra.*

fits the facility as a whole would be a reimbursable "reasonable cost" of providing service to Medicare patients. Such a result is contrary to 42 U.S.C. § 1395x(v)(1)(A), in which Congress plainly evinced its intent that the Medicare program not become an insurer of all costs incurred by participating hospitals, regardless of how tangentially related those costs are to the treatment of Medicare patients. *Metropolitan Medical Center v. Harris*, 693 F.2d at 782. *See St. Mary of Nazareth Hospital Center v. Dep't of Health & Human Services*, 698 F.2d at 1343.

Finally, the Secretary's Medicare regulations exclude "charity" care as a reimbursable cost under the Medicare program. 42 C.F.R. §§ 405.402(c)(7), 405.420. "Charity" is defined as "reductions in charges made by the provider of services because of the indigence or medical indigence of the patient." 42 C.F.R. § 405.420(b)(2). The Secretary has interpreted these regulations to prohibit Medicare reimbursement for Hill-Burton free care costs. Of course, when the interpretation of an agency regulation is in issue, deference is given to the interpretation of that regulation by the officers charged with its administration, unless it is plainly erroneous. *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965).

CMC contends that Hill-Burton free care cannot be charity because it is mandated by law rather than "voluntarily" provided. However, the Secretary's charity regulations do not make a voluntary versus mandatory distinction. Even though the free services required by the Hill-Burton Act may not fall strictly within the dictionary definition of "charity," the care provided indigents under the Hill-Burton Act is clearly encompassed by the definition of that word in the Secretary's regulation. The Secretary's interpretation of his charity regulation which excludes Hill-Burton free care as a reimbursable Medicare cost is wholly consistent with the limitations on reimbursement set forth in the Medicare Act itself. *See* 42 U.S.C. §§ 1395x(v)(1)(A), 1395y(a)(2), and 1395y(a)(3). *See also* Comment, *The Propriety of Reimbursement by*

*Medicare for Hill-Burton Free Care,* 130 U.Pa.L.Rev. 892 (1982).

In conclusion, as pointed out by the court below, it strains the bounds of logical reasoning to believe that Congress would require hospitals to provide a certain amount of free health care to indigents in reciprocation for receiving federal funds from one program and then allow reimbursement with federal funds from another program for the obligation it originally incurred in accepting the Hill-Burton subsidy. *Catholic Medical Center,* 546 F.Supp. at 299.

Accordingly, the judgment of the district court is affirmed.