**BOND HOSPITALS, INC., et al., Plaintiffs,**
v.
**Margaret M. HECKLER, Secretary of The Department of Health and Human Services, Defendant.**
**Civ. A. No. 82–3527.**

United States District Court,
District of Columbia.

May 16, 1984.

Mark S. Windisch, Weissburg & Aronson, Inc., Los Angeles, Cal., Bruce R. Gilbert, Case & Cohen, Washington, D.C., for plaintiffs.

Thomas W. Coons, Dept. of Health and Human Services, Health Care Financing and Human Development Services Div., Baltimore, Md., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

### Introduction

The plaintiffs in this action seek judicial review of a final decision of the defendant, the Secretary of Health and Human Services ("Secretary"), denying their Medicare cost reimbursement claim under 42 U.S.C. § 1395oo (f)(1). Plaintiffs are the Hospital Corporation of America, a Tennessee corporation which owns, operates and manages hospitals, and 44 of its subsidiary hospital corporations. For purposes of this Memorandum Opinion, the plaintiffs are collectively referred to as "HCA" or the "Corporation." HCA is a provider of Medicare services under Part A of the Medicare program, 42 U.S.C. §§ 1395c–1395i.

The matter presented for the Court's consideration is whether the Medicare program must reimburse the plaintiffs for interest paid on federal and state income tax deficiencies. The material facts are not in dispute, and the parties have filed cross motions for summary judgment. For the reasons stated below, the Court concludes that the Secretary's actions were not arbitrary, capricious, or contrary to law, and accordingly, affirms the denial of plaintiffs' request for reimbursement.

### Background

The tax deficiencies incurred by HCA arose from a dispute between the plaintiffs and the Internal Revenue Service ("IRS") concerning the amount of taxes owed in

1971. After an audit of the plaintiffs' 1971 tax return, the IRS proposed an adjustment to the amount of taxes owed based on the level of HCA's bad debt reserve and the imputation of interest from intercompany loans between HCA and its subsidiary hospitals. Following settlement discussions, the Corporation paid additional taxes for 1971, in addition to interest totalling $57,674. After this determination, the Tennessee Department of Revenue ("TDR") also assessed additional state income taxes against HCA. HCA paid the increased assessment on November 25, 1974, incurring interest in the amount of $7,594.

HCA submitted a Medicare Home Office Cost Statement for the fiscal year ending December 31, 1974 to Blue Cross of Tennessee, seeking reimbursement for the interest paid to the IRS and the TDR. As a private Medicare fiscal intermediary, Blue Cross is required to issue a written notice setting forth the amount of reimbursement which a hospital is entitled to receive for a given fiscal year. 42 U.S.C. § 1395h; 42 C.F.R. § 405.1803. Pursuant to its authority under 42 C.F.R. § 405.1831, Blue Cross determined that HCA's interest costs were not reimbursable costs under 42 U.S.C. § 1395f(b)(1), and HCA appealed this adverse determination to the Provider Reimbursement Review Board ("PRRB" or "Board"). 42 U.S.C. § 1395oo (a); 42 C.F.R. § 405.1837. On August 11, 1982, the PRRB issued a split decision which reversed Blue Cross' denial of the plaintiffs' claim. 42 U.S.C. § 1395oo (d); 42 C.F.R. § 405.1871.

Next, the Deputy Administrator of the Health Care Financing Administration, acting on behalf of the Secretary, reviewed the decision of PRRB pursuant to 42 U.S.C. § 1395oo (f)(1). On October 8, 1982, the Secretary reversed the decision of the Board. In support of her decision, the Secretary relied on decisions holding that providers are not entitled to reimbursement for payment of income taxes because such taxes are not related to patient care. The Secretary concluded that since the underlying income taxes are not related to patient care, any interest deficiency arising from these taxes is similarly unrelated to patient care. Thus, the Secretary reinstated the earlier disallowance of the Corporation's interest claim, and this appeal ensued on December 13, 1982.

## LEGAL ANALYSIS

### A.

### Statutory Background

This Court has jurisdiction over the plaintiffs' claims under 42 U.S.C. § 1395oo (f). Under this Medicare statutory scheme, providers of services are paid the "reasonable cost" of covered services furnished to Medicare beneficiaries. The statute broadly defines "reasonable cost" as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services...." 42 U.S.C. § 1395x(v)(1)(A). The Secretary is also given the authority to promulgate "regulations establishing the method or methods to be used, and the items to be included, in determining such costs...." *Id.* Costs in the nature of interest expenses are reimbursed if they are both "necessary and proper." 42 C.F.R. § 405.419(a). In order to qualify as "necessary," interest costs must:

(i) Be incurred on a loan made to satisfy a financial need of the provider....

(i) Be incurred on a loan made for a purpose reasonably related to patient care.

(iii) Be reduced by investment income except [numerous listed exceptions].

42 C.F.R. § 419(b)(2). In this instance, the Secretary relied on the provisions of 42 C.F.R. § 419(b)(2)(ii), as interpreted by section 2122.2 of the Provider Reimbursement Manual ("Manual"), in finding that HCA's interest costs were not necessary and denying the requested reimbursement.

### B.

### Standard of Review

■ The standard of review under 42 U.S.C. § 1395oo (f) incorporates the stan-

dard set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.* *Richey Manor, Inc. v. Schweiker*, 684 F.2d 130, 133 (D.C.Cir.1982). Under the APA, the Secretary's decision must be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(2)(A). This standard shows deference to the administrative decision of the agency, and the agency's interpretation should not be set aside "so long as the agency's interpretation is within the range of reasonable meanings that the words of the regulation admit." *Psychiatric Institute of Washington, D.C., Inc. v. Schweiker*, 669 F.2d 812, 814 (D.C.Cir.1981). *See Richey Manor, Inc. v. Schweiker*, 684 F.2d at 134.

### C.

### The Secretary's Decision

■ In this case, the Secretary determined that the interest expense on overdue taxes was not necessary because it was not incurred for a purpose reasonably related to patient care, as required by 42 C.F.R. § 405.419(b)(2)(ii). In reaching this conclusion, the Secretary made two separate determinations.

First, the Secretary pointed to recent court decisions which hold that a provider's payment of income-based taxes to state and federal governments is not a reimbursable cost under the Medicare statutory scheme. These decisions stand for the proposition that such expenses are not related to patient care because they are incurred solely on the basis of the provider's profit. *Sierra Vista Hospital, Inc. v. United States*, 687 F.2d 422, 426 (Ct.Cl.1982) (state franchise tax); *Humana, Inc. v. Schweiker*, Medicare & Medicaid Guide (CCH) ¶ 32,119, at 10,396–97 (D.D.C. Aug. 19, 1982), *appeal docketed*, Nos. 82–1986, 82–1987, 82–1989, 82–1994, 82–1995 (D.C.Cir. Aug. 24, 1982) (state and federal income taxes); *American Medical International, Inc. v. Secre-*

*tary of HEW*, 466 F.Supp. 605, 625–26 (D.D.C.1979), *aff'd*, 677 F.2d 118 (D.C.Cir. 1981) ("AMI") (state franchise tax).

Second, the Secretary recognized that the expense for which HCA seeks reimbursement is the payment of the interest on the overdue taxes, not the payment of the taxes themselves. She apparently accepted HCA's analogy equating the interest expense arising from the overdue taxes to interest on a "loan" from the federal government to HCA. Finally, she reasoned that this interest expense is not reimbursable because the underlying tax liability (the loan) was not incurred for a purpose reasonably related to providing patient care.

Under this analysis, reimbursement of any interest expense depends on whether the underlying loan is itself a reimbursable cost. If the underlying loan is a reimbursable cost, then the interest incurred on that loan is likewise reimbursable, so long as the other requirements of 42 C.F.R. § 405.-419 are satisfied. On the other hand, if the underlying loan is not a reimbursable cost, the provider is denied reimbursement of the interest expense associated with the loan.

This interpretation is fully consistent with the language and intent of the regulation governing reimbursement of interest expenses, and as such, is neither arbitrary nor capricious. 42 C.F.R. § 405.419(b)(2)(ii) only allows reimbursement of interest expenses which are "incurred on a loan made for a purpose reasonably related to patient care." Since the payment of income taxes is not related to patient care under the *AMI* line of cases, the Secretary reasonably concluded that expenses related to the delayed payment of such taxes are similarly unrelated to patient care.

HCA, however, argues that the underlying income tax expenses should be conceptually distinguished from any interest expenses associated with the late payment of these taxes.[1] In HCA's view, the Secre-

---

1. The fact that § 163 of the Internal Revenue Code permits the deduction of interest on income taxes on the one hand and denies the

deduction of the underlying taxes on the other is hardly surprising. Nor do the provisions of the Internal Revenue Code govern the applica-

tary should have disregarded the source of the "loan" which gave rise to the interest obligation, and instead, should have looked to whether the money "saved" by not paying the taxes when they were due was used for patient care. HCA states that since it used the retained funds for patient care, the indirect loan from the federal government was the economic equivalent of a commercial loan. Finally, HCA concludes that interest on both types of loans is reimbursable.

HCA's creative argument is unconvincing. This distinction between reimbursement of interest expenses and reimbursement of an underlying loan has been rejected in *North Clackamas Community Hospital v. Harris,* 664 F.2d 701, 708 (9th Cir.1980), and the "economic equivalence" argument has been repudiated in the similar context of Medicare reimbursement for Hill-Burton Act expenses. Under the Hill-Burton Act, 42 U.S.C. § 291, *et seq.,* hospitals are required to provide uncompensated care to indigent patients as the *quid pro quo* for the receipt of federal funds for hospital construction. Certain provider hospitals have attempted to charge their Hill-Burton costs to the Medicare program. In three of these cases, courts have rejected the providers' argument that the provision of free care is the economic equivalent of interest on a loan, and have consequently denied Medicare reimbursement for these costs. *See, e.g., Catholic Medical Center v. New Hampshire-Vermont Hospitalization Service, Inc.,* 707 F.2d 7, 9–10 (1st Cir.1983); *St. Mary of Nazareth Hospital Center v. Dept. of H. & H. Services,* 698 F.2d 1337, 1340, 1345 (7th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983); *Metropolitan Medical*

*Center and Extended Care Facility v. Harris,* 693 F.2d 775, 781 (8th Cir.1982).

While these cases do not directly support the Secretary's decision in this case,[2] the Seventh Circuit's explanation for disallowing Hill-Burton costs also supports a finding that interest on overdue taxes is similarly not reimbursable. As the Seventh Circuit emphasized in upholding the constitutionality of an amendment to 42 U.S.C. § 1395x(v)(1)

> to allow hospitals to use one federal program to fund their obligations under another in an attempt to "charge back" their excess costs to the government runs contrary to a reasonable reading of the [Hill-Burton and Medicare] Acts.

*St. Mary of Nazareth Hospital Center,* 698 F.2d at 1345.

In this case, the allowance of the interest expense would be equally unreasonable because it would require one federal program, Medicare, to underwrite the plaintiffs' obligation to a second federal entity, the Internal Revenue Service. This result would put the federal government in the position of making interest-free loans to providers of Medicare services. Absent some evidence of congressional support for this result, this conclusion should be rejected.

◼ The plaintiffs also advance two other arguments in general support of their contention that the Secretary's decision should be reversed. HCA argues that disallowance of its interest costs improperly shifts Medicare costs to non-Medicare patients in violation of 42 U.S.C. § 1395x(v)(1)(A). This argument begs the question because the issue is whether a particular cost is within the parameters of

---

ble legal principles of the Medicare statutory and regulatory scheme. *See Richey Manor, Inc.,* 684 F.2d at 135.

**2.** Both the First and Eighth Circuit decisions expressly found that Hill-Burton expenses were not akin to interest expenses. *Catholic Medical Center,* 707 F.2d at 9–10; *Metropolitan Medical Center and Extended Care Facility,* 693 F.2d at 781. In contrast, the Secretary in this case conceded that the costs in question are interest

expenses, but nevertheless denied reimbursement because the expenses were not related to patient care. Moreover, the Seventh Circuit relied on an explicit congressional amendment to the Medicare statute, 42 U.S.C. § 1395x(v)(1) in finding that Hill-Burton expenses were not reimbursable. *St. Mary of Nazareth Hospital Center,* 698 F.2d at 1342, 1345. No such evidence of congressional intent is available in this case.

"necessary costs of ... covered services ...." *Id.* The statutory mandate "merely provides that *reimbursable* costs shall not be shifted to non-Medicare patients ...", *North Clackamas Community Hospital,* 664 F.2d at 707 (emphasis added), it does not establish substantive guidelines for determining the question of reimbursement. Since the Secretary reasonably determined that interest on income taxes is not a reimbursable cost, her decision does not contravene the prohibition against cost-shifting.

■ Next, the plaintiffs argue that the Secretary improperly relied on PRM § 2122.2 in denying reimbursement, and her decision is therefore invalid. None of the reasons advanced by the plaintiffs supports this contention, and each is summarily rejected.

First, PRM § 2122.2 does not violate the procedural requirements of the APA. This issuance was designed to inform the public about the agency's construction of the Medicare statute, and is properly characterized as an "interpretive rule" within the meaning of 5 U.S.C. § 553(b)(A). As such, the agency was not required to promulgate § 2122.2 in conformity with the rulemaking requirements of the APA. *Homan & Crimen, Inc. v. Harris,* 626 F.2d 1201, 1210 (5th Cir.1980), *cert. denied,* 450 U.S. 975, 101 S.Ct. 1506, 67 L.Ed.2d 809 (1981).

■ In a related argument, the plaintiffs allege that the agency followed the unusual procedure of amending PRM § 2122.2 by means of an "Action Note" in Revision No. 37 to the Manual, issued in May 1971. Plaintiffs also claim that fiscal intermediaries were not consulted prior to this amendment. Even if the plaintiffs could establish their allegations, these actions are not impermissible under the Medicare statute or regulations, and they do not rise to the level of arbitrary or capricious agency decision-making.

■ Second, PRM § 2122.2A is not internally inconsistent, or inconsistent with section 2122.1 of the Manual. Section 2122.2A provides in pertinent part that:

> Certain taxes which are levied on providers are not allowable costs. These taxes are
>
> A. Federal income and excess profit taxes, including any interest or penalties paid thereon....

The fact that interest is not specifically excluded from allowable costs under other subsections of section 2122.2, including the subsection governing state income taxes, is irrelevant in the absence of some evidence that similar taxes are treated differently. In fact, the Secretary has treated federal and state income taxes exactly the same by disallowing the interest accrued on both types of taxes, and her decision in both cases was reasonable.

■ HCA also argues that the Provider Reimbursement Manual provides no explicit authority for the Secretary's disallowance of interest incurred on state income tax deficiencies. In reaching this conclusion, HCA mistakenly assumes that the Manual is the sole source of the Secretary's authority, when in fact, her authority is derived from the Medicare statute and accompanying regulations. These enactments support her decision in this case. *See* discussion *supra* at 1271–1272.

PRM § 2122.2A is also consistent with PRM § 2122.1, which states the general rule that most assessed taxes are allowable costs. Section 2122.1 permits reimbursement for taxes *and* related expenses, in contrast to section 2122.2A, which denies reimbursement for *both* items. These sections follow the same logic in treating interest on taxes in an identical fashion to the taxes themselves,[3] and are therefore consistent with one another.

---

3. The PRRB has allowed reimbursement for interest paid on self-employment (FICA) taxes, despite the fact that the taxes themselves are not reimbursable. *See* PRRB Dec. No. 81–D78, [1981–82 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 31,490, at 9442 (Aug. 21,

1981). The PRRB took an identical position in this case in allowing the interest on state and federal income taxes, and its position was subsequently reversed by the Secretary. Under these circumstances, the Secretary can hardly be accused of taking an inconsistent position with

## CONCLUSION

For the foregoing reasons, the Court finds that the Secretary's decision denying reimbursement for interest accrued on overdue state and federal income taxes was not arbitrary or capricious. The defendant's motion for summary judgment is granted, and the plaintiffs' complaint is dismissed with prejudice.

respect to the relationship between interest and the underlying taxes.