## The GERMANTOWN HOSPITAL AND MEDICAL CENTER, et al.

v.

## Margaret M. HECKLER, et al.

### Civ. No. 82–5016.

United States District Court,
E. Pennsylvania.

Sept. 30, 1983.

---

Roland Morris, William H. Lowery, Philadelphia, Pa., for plaintiffs.

Susan D. Bricklin, Philadelphia, Pa., for defendants.

## OPINION

CAHN, District Judge.

This is an appeal from an administrative determination made by The Health and Human Services Provider Reimbursement Review Board (P.R.R.B.) that 12 Pennsylvania hospitals are not entitled to reimbursement under the Medicare program for the costs of free care they provided to indigents as required by the Hill-Burton Act, 42 U.S.C. § 291, *et seq.* Plaintiffs are 12 non-profit Pennsylvania hospitals, which have received federal construction subsidies under the Hill-Burton Act in exchange for their agreement to provide free care to indigents. 42 U.S.C.A. § 291c(e). The defend-

ant is Margaret M. Heckler, Secretary of Health and Human Services (H.H.S.).

Plaintiff hospitals in this appeal challenge the constitutionality of Section 106 of the Tax Equity and Fiscal Responsibility Act (TEFRA), 42 U.S.C. § 1395x(v)(1)(M), which denies hospitals reimbursement from the Medicare program for the costs incurred in providing free care to indigents under the Hill-Burton Act, 42 U.S.C. § 291, *et seq.* Plaintiffs also challenge the interpretation of TEFRA made by the P.R.R.B. in that they urge Section 106, even if adjudged to be constitutional, does not preclude their claims. Plaintiffs seek reimbursement for the costs they incurred in providing free medical care to indigents and seek an injunction against enforcement of Section 106 of TEFRA.

Plaintiffs and defendants have filed cross-motions for summary judgment.[1] After considering the motions, and briefs, and after hearing oral argument, I have determined that Section 106 of TEFRA does not violate the constitution and that the plaintiffs' interpretation of Section 106 is incorrect. There are no disputed factual issues in this matter. Therefore, defendants' motion for summary judgment will be granted and plaintiffs' motion for summary judgment will be denied.[2]

## I. *Background*

The Medicare Act (42 U.S.C. § 1395, *et seq.*) was enacted in 1965 and transferred to public expense the cost of providing health care to the aged. Under this act, hospitals enter into an agreement with H.H.S. to provide Medicare services to eligible individuals. The hospitals are entitled to reimbursement under Medicare for the "reasonable cost" of providing health care services to Medicare beneficiaries.

The Hill-Burton Act (42 U.S.C. § 291, *et seq.*) was originally enacted in 1946 to remedy the shortage and inadequacy of hospital facilities in the United States. Hospitals were required to make two assurances

pursuant to 42 U.S.C. § 291c(e) in order to receive funds for construction and modernization of their facilities. The first was that health care institutions make available a reasonable amount of free services to indigents. The second assurance was that the hospitals would provide a community service open to all community residents.

In 1979, the Secretary promulgated Hill-Burton regulations (42 C.F.R. Sections 124.-501, *et seq.*) which established that hospitals must provide services to the indigent population at a level not less than 3 percent of "operating costs" or 10 percent of federal assistance received. The regulations further require that all Hill-Burton assisted facilities must participate in the Medicare program. 42 C.F.R. § 124.603(c)(1)(ii). In the first appellate case dealing with this issue, *Presbyterian Hospital of Dallas v. Harris,* 638 F.2d 1381 (5th Cir.), *cert. den.,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981), the court held that Hill-Burton contracted costs for indigent care are indirect costs to the hospitals and therefore reimbursable by Medicare.

As a result of this decision, the Secretary sought clarifying legislation from Congress which would exclude reimbursement of Hill-Burton indigent care costs under Medicare. Congress responded and passed Section 106(a) of TEFRA. Section 106 amended the Medicare Act by excluding such Hill-Burton costs from allowable costs under the Medicare program.

Section 106(b) provides that no Hill-Burton indigent care costs shall be reimbursable but that this exclusion "shall not apply to costs which have been allowed prior to the date of enactment of this Act pursuant to the final court order affirmed by a United States Court of Appeals." P.L. No. 97–248, § 106(b), 42 U.S.C.A. § 1395x (p. 426, 1983 Supp.). This language according to H.H.S. means that the reimbursement allowed in the *Presbyterian Hospital* case is to be honored, but that no further reim-

---

1. Defendants have also filed a Motion to Dismiss two hospital trade associations, The American Hospital Association and The Hospital Association of Pennsylvania for lack of standing.

2. There is no need to decide defendants' motion to dismiss since the point is moot.

bursement of Hill-Burton indigent care costs by the Medicare program is permissible.

## II. *Procedural History*

Fiscal intermediaries serve under contract as agents of the Secretary of H.H.S. and determine each hospital's Medicare reimbursement for each fiscal year. If a hospital is dissatisfied with the decision of an intermediary, it may seek review by appealing to the P.R.R.B., an administrative arm of H.H.S.

On August 4, 1981, plaintiff hospitals filed a request to the P.R.R.B. for a hearing to challenge initial disallowance of Hill-Burton costs. The P.R.R.B. held a hearing on May 25, 1982, and filed a decision on October 15, 1982, which held that plaintiff hospitals are not entitled to Medicare reimbursement for Hill-Burton contractual costs. The P.R.R.B.'s decision relied on Section 106 of TEFRA and its legislative history to support denial of plaintiff hospitals' claim for reimbursement:

The provision is intended to clarify that Hill-Burton free care costs have never been, and are not, allowable for medicare reimbursement purposes.

[1982] U.S.Code Cong. & Ad.News 1211. Plaintiff hospitals filed suit on November 12, 1982, in this court to obtain judicial review of the P.R.R.B.'s decision. I have jurisdiction over this matter pursuant to 42 U.S.C. § 1395oo.

This suit is one of a series of suits brought by hospitals throughout the country challenging the denial of reimbursement for Hill-Burton free care costs. Final decisions have been reached by a number of courts of appeal as well as by numerous district courts.

## III. *Discussion*

### A. *The Bases of Plaintiffs' Claims*

Plaintiff Hospitals contend that Section 106 of TEFRA is unlawful, arbitrary, capricious and unconstitutional because they are illegally being denied reimbursement for the reasonable costs of providing services to Medicare beneficiaries. In the first count, plaintiffs charge that by excluding the contractual costs of Hill-Burton indigent care from Medicare allowable costs, Section 106 results in the federal government's paying to them a rate for the care of Medicare beneficiaries which is so low that it constitutes a taking of property without just compensation.

In counts two and three, plaintiffs allege that the defendant's act of administering Section 106 alters and impairs the Medicare and Hill-Burton contracts of plaintiff hospitals and undermines their ability to fulfill their obligations under the contracts. Plaintiffs assert an estoppel theory and claim that the hospitals accepted Hill-Burton aid because they relied on the contractual understanding that providing indigent care was a prerequisite to their obtaining federal Hill-Burton assistance. Plaintiffs argue that the denial of reimbursement for Hill-Burton costs constitutes a breach of the Medicare and Hill-Burton contracts and results in the deprivation of plaintiffs' property without just compensation in violation of the Fifth Amendment. Plaintiffs also argue that the application of Section 106 to hospitals that have pre-existing Hill-Burton and Medicare contracts constitutes a retroactive legislative enactment that is fundamentally unfair and a denial of due process in violation of the Fifth Amendment.

Plaintiffs aver in their fourth count that Medicare's refusal to pay its fair share of Hill-Burton costs results in a shifting of costs to non-Medicare patients in violation of the Medicare Act's prohibition against cross-subsidization of Medicare patients, 42 U.S.C. § 1395x(v)(1)(A) and 42 C.F.R. § 405.451. In addition, plaintiffs maintain that Medicare's refusal to pay is in "irreconcilable conflict with other express, underlying, fundamental precepts of the Medicare Act and is unconstitutional as a violation of due process under the Fifth Amendment of the Constitution."

The fifth count asserted by plaintiffs is that Congress' attempt to require federal courts to decide pending actions in which it is a party constitutes an unconstitutional interference with the role of the judiciary

in violation of Article III of the Constitution which vests "the judicial power of the United States" in the federal courts.

Plaintiffs' sixth count is that Section 106(b) which denies Medicare reimbursement for Hill-Burton costs, except for past reimbursement to one hospital, constitutes unlawful special or selective legislation in violation of the due process and equal protection clauses of the Fifth Amendment.

The final count raised by plaintiffs is that the P.R.R.B.'s application of Section 106 of TEFRA constitutes action that is arbitrary, capricious, and does not comport with proper statutory interpretation.

### B. *The P.R.R.B. Has Properly Interpreted Section 106*

■ Plaintiffs raise the statutory interpretation issue of whether Section 106 excludes Hill-Burton indigent care costs from Medicare reimbursement. This is a threshold issue which I must meet before addressing the constitutional issues. Plaintiffs argue that the Congressional intent behind Section 106 is not clear because Congress lacked consensus on whether or not Hill-Burton costs are to be considered reimbursable indirect costs under the Medicare scheme. The statutory interpretation issue has repeatedly been decided against the plaintiffs. Following TEFRA's passage, a number of appellate courts have decided this issue against the plaintiffs.[3] The enactment of Section 106 of TEFRA and its legislative history reveal that Congress intended simply to "clarify that Hill-Burton free care costs have never been, and are not, allowable for Medicare reimbursement purposes." [1982] U.S.Code Cong. & Ad.News 1211.

I agree with the reasoning set forth in *St. Mary of Nazareth v. Schweiker*, 698 F.2d 1337 (7th Cir.1983) which held:

... section 106 is clear in that it is nothing more than the reaffirmation of long-standing policy that it was never the intent of Congress to allow Medicare

payments to be used to reimburse hospitals for the percentage of free care they provide indigents in repayment of their obligations under the Hill-Burton Act. 698 F.2d at 1344.

Section 291c(e)(2) of the Hill-Burton Act authorizes regulations the applicant hospital to assure that "there will be made available ... a reasonable volume of services to persons unable to pay therefore..." The same section allows "an exception ... if such a requirement is not feasible from a financial viewpoint."

These provisions read together suggest that Congress understood it was imposing a substantial financial obligation directly on hospitals, and thus allowed for relief from that obligation upon a showing of a lack of financial feasibility. Nothing in the Hill-Burton Act evidences a Congressional intent that the federal government is to become the financial underwriter of the hospitals' free care obligation.

In *St. Mary of Nazareth*, the court held that "the Hill-Burton Act and the Medicare Act embody separate and distinct federal programs and the legislative history of each revealed that Congress never intended to allow the use of Medicare funds to reimburse hospitals for the Medicare percentage of the free care rendered to indigents under the Hill-Burton Act." (698 F.2d at 1344).

The court held further that:

To reach any other conclusion would put the government in the anomalous position of acting as a permanent life support system for health care facilities who provide services for the indigent without requiring that the hospitals fulfill the contractual obligations they incurred when accepting Hill-Burton funds. This type of financial reimbursement advocated by the hospitals is totally inconsistent with the principles of the Hill-Burton Act. (*Id.*)

**3.** *Iredell Memorial Hospital, Inc. v. Schweiker,* 699 F.2d 196 (4th Cir.1983); *St. Mary of Nazareth v. Dept. of H. & H. Services,* 698 F.2d 1337 (7th Cir.1983); *Metro. Med. Ctr. & Extended Care Fac. v. Harris,* 693 F.2d 775 (8th Cir.1982); *Harper-Grace Hospitals v. Schweiker,* 691 F.2d 808 (6th Cir.1982), and *Memorial Hosp. v. Heckler,* 706 F.2d 1130 (11th Cir.1983).

Plaintiffs argue that the circuit court decisions not in their favor be disregarded by this court since the Fifth Circuit has already set controlling precedent in the *Presbyterian Hospital* case. However, in response to the *Presbyterian* decision, the Medicare regulations were revised to state that Medicare would not pay the costs of uncompensated services furnished by a provider in fulfillment of a Hill-Burton free care obligation. The revision states:

> § 405.420 Bad debts, charity, and courtesy allowances.
>
> (b) Definitions...
>
> (2) *Charity allowances.* Charity allowances are reductions in charges made by the provider of services because of the indigence or medical indigence of the patient. Cost of free care (uncompensated services) furnished under a Hill-Burton obligation are considered as charity allowances.
>
> (g) *Charity allowances.* Charity allowances have no relationship to beneficiaries of the health insurance program and are not allowable costs. Those charity allowances include the costs of uncompensated services furnished under a Hill-Burton obligation. (Note: In accordance with Section 106[b] of Pub.L. 97–248 [enacted September 3, 1982], this sentence is effective with respect to any costs incurred under Title XVIII of the Social Security Act, except that it does not apply to costs which have been allowed prior to September 3, 1982, pursuant to a final court order affirmed by a United States Court of Appeals.)

42 C.F.R. § 405.420 (1982).

The effect of this revision was explained in the Federal Register which establishes that this rule is retroactive, except for those costs allowed in the *Presbyterian Hospital* case:

> III. Effective Date
>
> Section 106 of Pub.L. 97–248 is effective with respect to all costs incurred under Medicare, both before and after enactment of the amendment, except those specific costs allowed under court order in the Presbyterian Hospital decision. Consequently, this rule is applicable to all past disputes concerning Medicare disallowances of costs of free care furnished under a Hill-Burton obligation except those cost years specifically litigated in the Presbyterian Hospital case, as well as future treatment of these costs. Any Hill-Burton costs paid by Medicare under the principle of the Presbyterian decision, but not specifically litigated therein, are impacted by this statutory amendment. These cost reports will be reopened and the Hill-Burton free care costs will be disallowed.

47 Fed.Reg. 43656 at 43657 (1982).

The precedential value of *Presbyterian* has been further eroded because other circuit courts which have passed on the issue have rejected the *Presbyterian* reasoning that Hill-Burton care expenses are an indirect cost that hospitals incur to benefit all patients, including Medicare beneficiaries, and which are reimbursable under Medicare. *See* note 3, *supra.* Thus, on the statutory interpretation issue, it is clear that TEFRA and its supporting regulations exclude Medicare reimbursement for the costs incurred in providing free care to indigents.

### C. *Section 106 of TEFRA is Constitutional*

Plaintiffs allege generally that the application of Section 106 violates the Fifth Amendment's prohibition against the taking of property without just compensation and without due process of law. Plaintiffs argue that Section 106 unconstitutionally impairs the providers' contractual rights under both the Hill-Burton and the Medicare contracts to which they are parties with the federal government. As consideration for the receipt of federal Hill-Burton funds for hospital construction, the providers gave an assurance that they would furnish a reasonable volume of health care to indigents. 42 U.S.C. § 291c(e). At the time of the enactment of the Hill-Burton Act in 1946, the volume of indigent care was left to the discretion of the hospitals. Subsequent regulations promulgated by

the Secretary in 1972 and 1979 prescribed set levels of indigent care that the hospitals are required to provide and further required Hill-Burton assisted facilities to participate in the Medicare program. 42 C.F.R. §§ 53.111, 53.113 and §§ 124.503 and 124.603.

Section 106 imposed a further obligation on the providers because it mandates that they must absorb the Hill-Burton indigent care expenses and not be reimbursed by Medicare. According to plaintiffs, this will force the hospitals either to operate at a loss, or pass the cost on to other patient groups in violation of the Medicare Act which specifically forbids cross-subsidization. 42 U.S.C. § 1395x(v)(1)(A). Thus the plaintiffs claim that the federal government has altered and impaired the providers' Hill-Burton contracts because the government has imposed additional obligations on the providers long after its own performance on the contracts was completed. This impairment of providers' rights under the Hill-Burton contracts, according to plaintiffs, amounts to a deprivation of property in violation of the due process clause of the Fifth Amendment. *Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934).

Plaintiffs cite *Lynch* to illustrate the principle that Congress cannot repudiate the contractual obligations of the federal government to the providers under their Hill-Burton and Medicare contracts. In *Lynch,* during World War I, the federal government issued renewable contracts of insurance against death or disability for which the insureds paid favorable monthly premiums. The insurance policies were issued pursuant to the War Risk Insurance Act of 1917 and the government incurred significant expense in making such insurance available to the public. By 1933, the costs of the policies became burdensome to the United States and Congress enacted legislation that effectively repealed the War Risk Insurance Act. The plaintiffs in *Lynch* were beneficiaries of policies that had been issued under the Act and which the United States now refused to honor.

The Supreme Court held that the government's refusal to honor the policies deprived the plaintiffs of their property without due process in violation of the Fifth Amendment.

The court stated:

"The Fifth Amendment commands that property be not taken without making just compensation. Valid contracts are property, whether the obliger be a private individual, a municipality, a State or the United States. Rights against the United States arising out of a contract with it are protected by the Fifth Amendment.... When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals."

*Id.* at 579, 54 S.Ct. at 843. The court added that "Congress was without power to reduce expenditures by abrogating contractual obligations of the United States. To abrogate contracts, in the attempt to lessen government expenditure, would not be the practice of economy, but an act of repudiation." *Id.* at 580, 54 S.Ct. at 844.

 Plaintiffs claim that Section 106 was enacted by Congress for precisely the same reason that the legislation was struck down in *Lynch.* The federal government, according to plaintiffs, is attempting to reduce expenditures by repudiating its obligations under its Medicare contracts with the providers. This constitutional attack on Section 106 cannot be sustained. While it is undisputed that the government may not with impunity abrogate vested contractual rights, that rule does not apply here because any right to Medicare reimbursement for Hill-Burton free care is statutory and not contractual. 42 U.S.C. § 1395, *et seq.* The obligations of the government under the contractual arrangements have been fulfilled (Hill-Burton funds for new construction have been paid over by the government) and Section 106 does not abrogate any contractual obligation of the government. There is no contractual obligation requiring H.H.S. to provide Medicare reimbursement. Rather, upon joining

the Medicare program, providers gain a statutory entitlement to reimbursement. 42 U.S.C. § 1395f(b). Thus the amount of reimbursement is governed not by contract but by statute; specifically the Medicare Act's "reasonable cost" provisions. 42 U.S.C. § 1395x(v)(1)(A).

■ Retroactive adjustments in the Medicare reimbursement system have been declared constitutional because included in the concept of statutory entitlement to reimbursement is the possibility that the statute or implementing regulations may be changed. *Springdale Convalescent Center v. Mathews,* 545 F.2d 943, 955–57 (5th Cir.1977). In addition, courts have recognized that "the expectations of those who enter a regulated field are diluted by the knowledge that occasional changes will be made to better carry out regulatory purposes." *Adams Nursing Home of Williamstown, Inc. v. Mathews,* 548 F.2d 1077, 1081 (1st Cir.1977) (citing *Federal Housing Administration v. Darlington, Inc.,* 358 U.S. 84, 79 S.Ct. 141, 3 L.Ed.2d 132 [1958] ).

■ Next we must address the plaintiffs' claim that Section 106 retroactively denies compensation and thus constitutes a taking of property without just compensation in violation of the Fifth Amendment. That Amendment provides in relevant part that no person shall "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." In *Arlington Hosp. v. Schweiker,* 547 F.Supp. 670, 675 (E.D.Va.1982), the court found Section 106 constitutionally sound in the face of an attack based upon an uncompensated "taking" within the meaning of the Fifth Amendment. After balancing the nature and strength of the public interest served by Section 106 against the hospital's asserted right to reimbursement, the court found that the "strength of the public interest involved, and the relative insubstantiality of the plaintiff's interest" required a holding that Section 106 is constitutional.

■ Plaintiffs also allege that Section 106 is not a simple clarification of existing law, but rather retroactive legislation. I disagree because "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary". *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Section 106 and its legislative history make clear that hospitals are not to receive reimbursement from the Medicare program for the costs incurred in providing free care to indigents under the Hill-Burton Act. The only question remaining is whether plaintiff can demonstrate that the application of Section 106 to this case would be "manifestly unjust." The Supreme Court in *Bradley* identified three factors to be considered in the "manifest injustice" inquiry: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." 416 U.S. at 717, 94 S.Ct. at 2019. I can ascertain no manifest injustice of the type contemplated by *Bradley.* Neither the nature of the parties nor the nature of their rights is suggestive of any "manifest injustice". The hospitals' purported right to Medicare reimbursement for Hill-Burton uncompensated care costs was never expressly granted by statute or regulation. As the court in the *St. Mary of Nazareth* case stated:

> ... this alleged right simply arises out of the hospitals' reading of the Medicare Act through rose colored glasses, a reading which is to the hospitals' pecuniary advantage... There is not a scintilla of proof in this record that Congress ever intended the Medicare program to reimburse hospitals for the Medicare percentage of the cost of providing medical care pursuant to their Hill-Burton obligations.

698 F.2d 1345 (1983).

The third factor noted in *Bradley,* also supports the constitutionality of Section 106 because it imposes no "additional or unforeseen obligation" on plaintiffs. 416 U.S. at 721, 94 S.Ct. at 2021. The denial of reimbursement imposes no additional or unforeseen obligation on plaintiffs because

their claim has been repeatedly rejected throughout the lengthy administrative process and because they obligated themselves contractually to provide Hill-Burton free care. Section 106 must be sustained.

### IV. *Conclusion*

I hold that the P.R.R.B. has properly interpreted Section 106 of TEFRA to preclude Medicare reimbursement to the plaintiffs in regard to their contractual obligations pursuant to the Hill-Burton Act. I further hold Section 106 to be constitutional.