LEILA HOSPITAL AND HEALTH CEN-
TER, a DIVISION OF SISTERS OF
MERCY HEALTH CORPORATION,
Plaintiff,

v.

Otis R. BOWEN, Secretary, Department of Health and Human Services and Carolyne K. Davis, Administrator, Health Care Financing Administration, Defendants.

No. K85–563.

United States District Court,
W.D. Michigan, S.D.

May 28, 1987.

See also 661 F.Supp. 394.

William Christopher, Honigman, Miller, Schwartz, & Cohn Detroit, Mich., for plaintiff.

Gerard Keating, Office of Gen. Counsel, Health and Human Services, Washington, D.C., for defendants.

OPINION

ENSLEN, District Judge.

The Court held a hearing in this case on December 18, 1986 to consider plaintiff's May 21, 1986 Motion for Summary Judgment and defendants' July 28, 1986 Motion to Dismiss or in the Alternative for Summary Judgment. The parties indicated in their motions that there are no genuine issues of material fact, and that the Court thus could dispose of the case as a matter of law. Having reviewed the parties' submissions, I agreed, and in a bench opinion denied plaintiff's motion and granted defendants' motion. This opinion is intended only to memorialize the Court's bench opinion and in no way affects the finality of the Court's December 23rd Judgment.

*Facts*

Plaintiff, a division of the Sisters of Mercy Health Corporation, is a 228 bed, acute care hospital located in Battle Creek, Michigan. Among other patients, plaintiff services patients who are covered under the Federal Medicare program, and thus is considered to be a provider under that program. See Social Security Act of 1965, Subchapter XVIII, 42 U.S.C. §§ 1395–1395xx ("The Act"). This case involves claims by the plaintiff that defendants have failed to reimburse it properly for expenses it incurred in treating patients covered by part A of the Medicare program. 42 U.S.C. §§ 1395–1395i–2. As the Court has noted, the parties do not disagree about the material facts. They have, moreover, thoroughly briefed the structures of the various methods by which defendants have reimbursed plaintiff for its Medicare-related expenses, and several courts have also covered this area. *See, e.g., Washington Hospital Center v. Bowen*, 795 F.2d 139 (D.C.Cir. 1986); *Georgetown University Hospital v. Bowen*, No. 85–1845 (D.D.C. April 11, 1986) Medicare and Medicaid Guide (CCH) ¶ 35,-341, *appeal pending*, (D.C.Cir.); *Doctors General Hospital, Inc. v. Heckler*, 613 F.Supp. 1036 (S.D.Fla.1985). In this opinion, therefore, I will only briefly outline the factual bases for the parties' legal disagreements.

Prior to October 1, 1983, defendants reimbursed health care providers such as plaintiff under the Medicare program on a retrospective basis for the lesser of either the providers' "customary charges" or the "reasonable costs" they incurred in furnishing inpatient services for Medicare patients. *See* 42 U.S.C. § 1395x(v)(1)(A). In 1972, Congress amended the Medicare program to define reasonable cost for routine services as being "the cost actually incurred, excluding therefrom any part of incurred costs found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A). This amendment, section 223(a) of the Act, granted the Secretary of Health and Human Services (the "Secretary") the authority to establish limits on provider costs. The Secretary thus would reimburse a health care provider for the lesser of its actual allowable costs or the section 223 limit he had established for that provider.

Pursuant to his section 223 authority, the Secretary began in 1974 to publish yearly schedules of the limits placed on reimbursable hospital costs. As required by the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, the Secretary would publish these schedules "only after publishing a notice of proposed rulemaking and receiving comments solicited by that notice." *District of Columbia Hospital Association v. Heckler ("DCHA")*, No. 82–2520 (D.D.C. April 29, 1983) Medicare and Medicaid Guide (CCH) ¶ 32,872, at 9365. These section 223 limits were composed of a labor and a nonlabor portion. Starting in 1979, the Secretary calculated the labor portion of these limits by using a wage index that was based on Bureau of Labor Statistics ("BLS") data. These data reflected regional differences in hospital wages, and thus, according to the Secretary, allowed him to determine more accurately a health care providers' reasonable and necessary costs. This wage index was slightly modified, pursuant to a notice of the proposed change, in 1980.

In 1981 the Secretary again modified the wage index, this time by excluding wage data from Federal government hospitals. In the final notice of this change in the wage index, the Secretary stated that the change "will help improve the accuracy of the wage index adjustment" because federal hospitals "typically use national pay scales [that] ... do not necessarily reflect area wage levels." 45 Federal Register 33639 (June 30, 1981). Because he thought that this adjustment in the wage index was a minor technological change in methodology, the Secretary did not follow the APA's notice and comment procedure in promulgating it; he instead waived those procedures and simply published the final notice. 46 Federal Register 33638, 33640.

This "minor technological change" had some significant ramifications for the plaintiff. Specifically, the change resulted in a $20.29 decrease in plaintiff's section 223 cost limits for its 1982 fiscal year, and a

$21.84 decrease in its section 223 costs limits for its 1983 fiscal year. See Affidavit of Bernard Yost, ¶¶ 10–30. Plaintiff's total loss due to this change for its 1982 fiscal year, which ran from July 1, 1981 to June 30, 1982, was approximately $202,052; its total loss due to this change for its 1983 fiscal year, which ran from July 1, 1982 to June 30, 1983, was approximately $631,-165.00. Yost Affidavit, ¶¶ 25 and 30. These "losses" represent the difference between what plaintiff was reimbursed under the 1981 change in the wage index and what it would have been reimbursed if the Secretary had not changed the index by excluding data from federal government hospitals. The Court notes here that this change in the wage index evidently caused plaintiff's level of reimbursement under the Act to drop because there is a Veteran's Administration hospital in the Battle Creek standard metropolitan statistical area ("SMSA"). Complaint, ¶ 31.

This change in the 1981 wage index had ramifications, moreover, beyond plaintiff's 1982 and 1983 fiscal years. Specifically, plaintiff's 1984 fiscal year was subject to the new cost limits Congress had imposed in 1982 under the Tax Equity and Fiscal Responsibility Act ("TEFRA"). 42 U.S.C. § 1395ww(b). TEFRA changed the Medicare cost-based reimbursement scheme from a per diem basis to a per discharge basis. Under the TEFRA cost-based scheme, the Secretary determined a target amount per discharge for a health care provider. He then reimbursed the provider for 100% of the costs it incurred up to that target amount. A provider, would, however, recover only 25% of the costs that exceeded that amount. The 1981 change in the wage index affected plaintiff's reimbursement under this scheme because its target amount per discharge was based, in part, on its allowable operating costs per case for its base year. Plaintiff's base year was its 1983 fiscal year, which is one of the two years in which the 1981 change had the effect of reducing plaintiff's allowable costs under the cost-based reimbursement scheme that existed prior to TEFRA. In essence, the lower cost limits the Secretary imposed on plaintiff in its 1982 and

1983 fiscal years due to the 1981 change in the wage index carried through to plaintiff's 1984 fiscal year.

In 1983 Congress again changed the Medicare reimbursement scheme, this time in a drastic manner. It enacted a prospective payment system ("PPS") which, when fully implemented, will entirely do away with the reasonable-cost system of reimbursement. Under the PPS, a health care provider will be reimbursed solely on a per discharge basis and on the basis of prospectively determined rates. These rates will be based on 468 specified diagnosis related groups (DRGs); the provider will be reimbursed depending into which group the patient falls. This case does not concern these DRGs or the levels of reimbursement under them. Plaintiff, rather, challenges the reimbursements to which it will be entitled during the four-year transition phase into this new system. During this transition phase, plaintiff's reimbursement level will be based on a mixture of the DRG or federal rate and what is called a hospital-specific rate. The hospital-specific portion of this mixture is calculated by "multiplying the hospital's historic allowable cost experience per discharge in the PPS base year, updated for inflation, by a percentage based on which PPS year it is." Plaintiff's Brief at 9. During the first year of this phase-in period, which was plaintiff's 1985 fiscal year, this percentage was 75%; it will thereafter decline to 50%, 45%, 25%, and eventually be phased out altogether.

The 1981 change in the wage index methodology affects plaintiff's reimbursement during this four-year phase-in period because plaintiff's PPS base year is its 1983 fiscal year, which, as I noted above, was one of the years in which the 1981 change had the effect of lowering plaintiff's section 223 cost limits and hence its level of allowable costs. This reduction in plaintiff's allowable costs during its 1983 fiscal year thus also effectively reduced plaintiff's reimbursements during this phase-in period under the PPS.

In 1983 the United States District Court for the District of Columbia ruled that the Secretary had promulgated the 1981

change in the wage index methodology in violation of the APA, and declared the change to be invalid. *DCHA*, Medicare and Medicaid Guide, ¶ 32,872, at 9370. The court ordered the Secretary to publish a notice in the Federal Register stating that "the 1981 schedule for Medicare hospital costs limits has been declared invalid with regard to the wage index." *DCHA* at 9370. Soon after the District of Columbia court had issued its decision, plaintiff sought to have its section 223 wage limits, and hence its reimbursement levels, changed in accordance with that decision. *See* Plaintiff's Brief in Opposition at 29, n. 18; Administrative Record of Proceedings Before the PRRB at 13–16 and 52–76. Specifically, plaintiff sought to have its fiscal intermediary, and ultimately defendants, determine its section 223 wage limits in accordance with the pre–1981 methodology.

On February 17, 1984 the Secretary published a proposed notice reissuing the 1981 change in the wage index methodology. He states that this publication was in response to the district court's holding in *DCHA* that he could not change the methodology without first complying with the APA's proposal and comment requirements. On November 26, 1984, after having received and considered comments on this proposed change, the Secretary repromulgated the 1981 wage index change. He chose, moreover, to give the change retroactive effect. 49 Federal Register 46495 (stating that the final notice "affirms the use of the wage index that was used to calculate the 1981 schedule of limits on hospital per diem inpatient general routine operating costs" and applies "to cost reporting periods beginning on or after July 1, 1981, and cost reporting periods ending after September 30, 1981, as well as cost reporting periods beginning on or after October 1, 1981, and before October 1, 1982"). In accordance with this decision to give the 1984 repromulgation of the 1981 change in the wage index retroactive effect, the Secretary declined to change plaintiff's section 223 wage limits for its 1982 and 1983 fiscal years, and hence to alter plaintiff's reimbursement under the Medicare Act. See Administrative Record at 1 (in which the

Provider Reimbursement Review Board determined that it was without "authority to decide the question of whether the Section 223 Cost Limits promulgated with a wage index for 1981 that excluded wage data from Federal Government hospitals is valid").

On December 4, 1985 plaintiff filed its present complaint, seeking to have the Court, among other things, declare that defendants' 1981 enactment was procedurally invalid; declare that defendants' attempted 1984 repromulgation of the 1981 wage index with retroactive effect is invalid; enjoin defendants from applying any reimbursement limits based on the invalid wage index, to either prior years that were reimbursed retrospectively on the cost-based system or to the years that fall under the PPS; and require defendants to reimburse it for its Medicare-related costs in accordance with a proper wage index. In addition to issues concerning the validity of the 1981 change in the wage index and of the 1984 repromulgation of that change, the parties have raised numerous issues concerning 1) the Court's jurisdiction to determine the effect this change had on plaintiff's reimbursements under the TEFRA reimbursement scheme and the PPS in addition to its effect on plaintiff's reimbursements for its 1982 and 1983 fiscal years, and 2) the relief to which plaintiff may be entitled if it prevails on its challenge to the change in the wage index. These jurisdictional and remedial issues concern the structures by which defendants consider challenges to its reimbursement decisions and compensate providers who succeed in such challenges. As I discuss below, I do not believe that I need to consider these issues, and hence these structures, in order to decide the pending motions. I therefore will not discuss them in this opinion.

### Discussion

The Court believes that the parties have raised six issues in their motions and memoranda: (1) whether the 1981 promulgation of the change in the wage index methodology was procedurally valid; (2) whether

the 1984 repromulgation of this change was substantively valid; (3) whether the 1984 repromulgation of the 1981 change with retroactive effect was valid; (4) if the 1984 repromulgation with retroactive effect was invalid, which wage index should defendants apply to plaintiff's situation; (5) does the Court possess subject matter jurisdiction to consider plaintiff's challenges to its reimbursements under the TEFRA cost-based scheme and the PPS; and (6) is the Secretary's prospective relief, or non-retroactive correction, rule valid. As I indicated above, I do not believe that I need to reach issues 4, 5, and 6 in order to resolve the parties' pending motions, and hence will not discuss them further in this opinion.

With regard to the first issue, the defendants do not challenge plaintiff's assertion that the Secretary improperly promulgated the 1981 change in the wage index methodology. *See* Defendants' Memorandum of Points and Authorities at 26, n. *. The Secretary takes the position, rather, that the 1984 reissuance of the wage index, with its change in methodology, "clearly superseded and supplanted the action taken in 1981," and thus is the only promulgation the Court need consider in this decision. *Id.* Similarly, plaintiff does not actively contest defendants' position on the second issue, *i.e.*, that the change in the wage index methodology is substantively valid because it is logical and reasonable. See Defendant's Memorandum at 39–42 and 47–52. Plaintiff does argue in its reply brief that the substantive merits of the change in the wage index is irrelevant, and that deciding whether the index is substantively valid "requires factual determinations beyond the scope of this action." Plaintiff's Brief in Opposition at 32. As I discuss below, however, the Court believes that the substantive validity of the wage index is relevant, and that this issue falls in defendants' favor.

The parties do vigorously contest the third issue, which the Court finds to be the dispositive issue in this case. As defendants note in their reply brief, "[u]nless the Court rules adversely to the Secretary on the validity of the 1984 wage index rule, the remainder of plaintiff's claims in this action need not be considered." Defendant's Reply Brief at 28; see Plaintiff's Brief at 26.

Plaintiff argues vigorously that the Secretary's 1984 retroactive repromulgation of the wage index rule violates the Administrative Procedures Act, due process of law, and the Medicare Act. Plaintiff notes that the APA is designed to afford private parties with an opportunity to comment on, and thus attempt to affect, proposed agency action before it becomes final, and that numerous courts have held that an agency may not substitute a post-promulgation comment period for the statutorily required pre-final notice opportunity for comment. *E.g., Sharon Steel Corp. v. Environmental Protection Agency,* 597 F.2d 377, 381 (3d Cir.1979). As the Third Circuit has noted, "[i]f a period for comments after issuance of a rule could cure a violation of the APA's requirements, an agency could negate at will the Congressional decision that notice and an opportunity for comment must precede promulgation." *Id.* at 381. In this case, plaintiff argues, to allow the Secretary to give retroactive effect to his 1984 repromulgation of the wage index would effectively vitiate the APA's notice and comment requirement; an agency would be able to promulgate a regulation without notice and comment, have it declared invalid by a court, and then repromulgate it, facially in compliance with the APA, with retroactive effect, thus accomplishing the same result as the original, invalid, promulgation. Plaintiff argues, moreover, that the record indicates that the Secretary's 1984 repromulgation was purely *pro forma,* and that he never intended to consider seriously any challenges to the wage index. Plaintiff thus concludes that to grant the 1984 repromulgation retroactive effect would destroy the effectiveness of the APA. *See Georgetown University Hospital,* Medicare and Medicaid Guide, ¶ 35,341 at 10,696.

Second, plaintiff argues that the retroactive application of the wage index rule violates due process of law. Plaintiff bases this argument on its belief that defendant

cannot demonstrate a compelling reason for applying the 1984 repromulgation retroactively, and that to do so thus would violate the Medicare Act. Third, plaintiff argues that the Secretary's attempted retroactive repromulgation of the wage index rule violates the Medicare Act because Congress intended that the Secretary exercise his section 223 cost limit powers only on a prospective basis. It notes that the district court in *Georgetown University Hospital* stated that it is not even clear that the Secretary possesses the statutory authority to promulgate retroactive regulations. Plaintiff expands on this argument in its reply brief, arguing that section 1861(v)(1)(A) of the Act does not authorize retroactive application of the wage index, and that there exists no other statutory authority for this action.

Finally, plaintiff argues that the Court should invalidate the Secretary's 1984 retroactive wage index rule under the balancing approach courts generally employ in deciding whether an agency properly gave a rule retroactive effect. Plaintiff argues in this regard that the 1984 retroactive repromulgation does not serve statutory interests, but rather, as the district court in *Georgetown University Hospital* found, significantly infringes on the plaintiff's legitimate statutory interests and expectancies.

Defendants respond that the Secretary possesses the statutory authority to engage in retroactive rule-making, under appropriate circumstances, and that he properly exercised that authority in this case. It notes that the Supreme Court has said that in deciding whether an agency rule should be given retroactive effect, a court must balance the effect of retroactivity "against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles." *SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947). "If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law." *Chenery Corp.*, 332 U.S. at 203, 67 S.Ct. at 1580. Defendants also argue that consideration of the five factors the District of Columbia Circuit has established for use in cases involving the retroactive application of an agency rule compels the conclusion that the 1984 regulation may be applied retroactively. *See Retail, Wholesale and Department Store Union v. NLRB ("Rental Union")*, 466 F.2d 380, 390 (D.C.Cir.1972). Finally, defendants argue that this Court should not follow the decision of the district court for the District of Columbia in *Georgetown University Hospital*, and that in any event, the 1984 repromulgation of the wage index rule was not a truly retroactive rule since the 1981 rule was invalid only because of a procedural flaw in its promulgation, and plaintiff could not have validly relied on any other wage index.

The Court believes that this retroactivity issue actually presents two issues for it to decide. The first is whether the Secretary possesses the statutory authority to issue rules or regulations that have retroactive effect in the context of section 223 cost limits. The second issue is whether if the Secretary does possess this statutory authority, he properly exercised it in giving his 1984 repromulgation of the wage index rule retroactive effect. Before discussing these two issues, I note that in his reply brief the Secretary argues not only that he possesses the statutory authority to promulgate retroactive rules, but that the Court should not subject such rules to the traditional balancing tests established in *Chenery* and *Retail Union*, but rather accord his determination of retroactivity substantial deference. *See Defendant's Reply Brief* at 3–6 & 13. The Court will not consider this argument for at least two reasons. First, I find that the Secretary is statutorily authorized to promulgate retroactive rules in this context, and that he properly gave the 1984 wage index rule retroactive effect. I thus need not reach his substantial deference argument. Secondly, the Secretary first raised this argument in his reply brief, which the Court did not receive until 2:00 yesterday afternoon. Plaintiff thus has not had an adequate opportunity to respond to it, and I certainly

have not had an adequate opportunity to consider it.

■ Plaintiff argues that the Secretary is not statutorily authorized to issue retroactive rules in this context because he is limited under section 1861(v)(1)(A) of the Act, 42 U.S.C. § 1395x(v)(1)(A), to issuing rules that have prospective effect. *See Daughters of Miriam Center for the Aged v. Mathews,* 590 F.2d 1250, 1258 n. 23 (3d Cir.1978). It states that it has been unable to locate any cases in which a regulation has been promulgated with full retroactive effect merely to cure a prior regulation that was invalidated on procedural grounds. The Court notes, however, that several courts have indicated that 42 U.S.C. § 1395x(v)(1)(A), which authorizes the Secretary to promulgate regulations "establishing the method or methods to be used and the items to be included" in calculating reasonable costs, and 42 U.S.C. § 1395hh, which authorizes the Secretary to "prescribe such regulations as may be necessary to carry out the administrations of the insurance programs," constitute sufficient statutory authorization to allow the Secretary to promulgate retroactive rules. *E.g., Fairfax Nursing Center, Inc. v. Califano,* 590 F.2d 1297, 1300 (4th Cir.1979); *Adams Nursing Home v. Mathews,* 548 F.2d 1077, 1082 (1st Cir.1977); *Hazelwood Chronic & Convalescent Hospital v. Weinberger,* 543 F.2d 703, 707–08 (9th Cir.1976), *vacated and remanded on other grounds,* 430 U.S. 952, 97 S.Ct. 1595, 51 L.Ed.2d 801 (1977). Plaintiff seeks to distinguish these cases on the ground that the regulation at issue in them was not totally retroactive in nature, but rather was predominantly prospective in nature. The Court believes that plaintiff's argument, however, does not affect the issue of whether the Secretary has the statutory authority to issue a retroactive regulation in this context, but rather whether his attempt to do so was reasonable. In particular, I note that the Third Circuit did not rest its decision in *Daughters of Miriam Center* on the Secretary's lack of statutory authority, but rather on its determination that it would violate traditional standards of retroactivity to give the rule in question there retroactive applica-

tion. *Daughters of Miriam Center,* at 1256–63. I thus believe that the Secretary had the statutory authority to promulgate the retroactive rule in question here. I also note that the Third Circuit itself stated in *Daughters of Miriam Center* that section 1395hh gives the Secretary the authority to promulgate retroactive regulations. *Id.* at 1256 & 1259 n. 23. It questioned only the effect of section 1395x(v)(A)(ii) on that authority.

■ The more difficult issue in this case is whether the Secretary's decision to give the 1984 repromulgation of the wage index retroactive effect was reasonable, and thus should be applied in this instance. Before discussing this issue, I note that I agree with the Secretary that the APA does not bar him from engaging in retroactive rulemaking. *See American Federation of Government Employees v. Block,* 655 F.2d 1153, 1156 (D.C.Cir.1981) (discussing the requirement that a rule be published thirty days before its effective day, 5 U.S.C. § 553(d)); *Colyer v. Harris,* 519 F.Supp. 692, 697–98 & 698 n. 2 (S.D.Ohio 1981) (discussion of the definition of a rule as an agency statement intended to have future effect, 5 U.S.C. § 551(4)).

As I noted above, the Supreme Court has stated that in deciding whether an agency rule should be given retroactive effect, a court must balance "the ill effect of the retroactive application of" the new standard against "the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles" by failing to give the standard retroactive effect. *Chenery Corp.,* 332 U.S. at 203, 67 S.Ct. at 1580. The Court of Appeals for the District of Columbia Circuit has further refined this rather vague standard by instructing courts to consider five principles or factors in deciding a retroactivity issue: "(1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a

retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard." *Retail Union*, 466 F.2d at 390. According to the D.C. Circuit, if, after considering these factors, the court believes that "the inequity of retroactive application has not been counterbalanced by sufficiently significant statutory interests," it should decline to accord the new standard retroactive effect. *Id.; see also Mobil Oil Corp. v. Department of Energy*, 678 F.2d 1083, 1090 (Temp.Emer.Ct.App.1982) (retroactive rule invalidated where the agency failed to show "that there will be a significant 'mischief of producing a result contrary to a statutory design'" and the absence of retroactivity "does not necessarily 'do violence to the law'").

■ I believe that an analysis of the five *Retail Union* factors demonstrates that the Secretary properly gave retroactive effect to his 1984 repromulgation of the wage index that excluded data from federal government hospitals. With regard to the first factor, the D.C. Circuit noted that although a rule should be given retroactive effect in a case of first impression so as not to "deny the benefits of a change in the law to the very parties whose efforts were largely responsible for bringing it about," a different result may be reached in subsequent cases, where equitable or statutory considerations militate against applying the rule retroactively. *Retail Union*, 466 F.2d at 390–91; *see also Georgetown University Hospital*, Medicare and Medicaid Guide, ¶ 35,341, at 10,696 (noting that to give the rule at issue there retroactive effect "would stand the APA on its head and dramatically discourage litigants from contesting procedural deficiencies" because the Secretary could then "simply engage in *pro forma* procedural corrections and retroactively reissue the rule against those who challenged it initially"). Plaintiff argues that this Court should make a similar finding since it challenged the wage index as soon as it could.

The Court believes, however, that the administrative record before the PRRB demonstrates that plaintiff merely attempt-

ed to ride the coattails of the *DCHA* decision. Whatever may be the merits of according a successful party the fruits of its victory, they do not apply here. Simply put, plaintiff has not succeeded in any challenge to the wage index, and to accord the 1984 rule retroactive effect thus will not deny it the fruits of any victory. The Court is troubled, as was the district court in *Georgetown University Hospital*, by the prospect that giving the 1984 rule retroactive effect will vitiate the notice and comment requirements of the APA. I believe, however, that the retroactivity doctrine is sufficiently flexible, and sufficiently based in equity, that courts will be able to handle such problems when they arise.

The second factor also falls in defendants' favor. Plaintiff attempts to argue that the 1984 repromulgation constituted an abrupt departure from prior law, and that the Court should not allow the Secretary's arguments "to distract it from the inescapable fact that *federal hospital data was not excluded until 1981.*" *Plaintiff's Reply Brief* at 30–31 (emphasis in original). The Court believes, however, that neither the 1981 change nor the 1984 repromulgation constituted such a drastic departure from prior law that it should deny the 1984 rule retroactive effect. As I noted previously in this opinion, the Secretary began using the wage index in 1979. He amended it in 1980, and again in 1981. The 1981 amendment clearly was significant, as evinced by the significant changes it has caused in plaintiff's Medicare reimbursements. I believe the focus under this factor, however, is whether the former standard was so well established that to allow the new standard to have retroactive effect would be inequitable. In this case, the record does not support a finding that the former standard was well-established. The wage index had been in effect for only two years when the change was made, and the Court takes note of the general rule that Medicare providers may be presumed to be on notice that repairs in the regulatory scheme, even repairs with retroactive effect, are likely. *Daughters of Miriam Center*, 590 F.2d at 1261; *see Germantown Hospital and Medical Center v.*

*Heckler,* 590 F.Supp. 24, 31 (E.D.Penn. 1983), *aff'd,* 738 F.2d 631 (3d Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985). Moreover, the Court notes that while the 1984 repromulgation in one sense was a departure from prior practice in that the *DCHA* decision arguably reinstated the pre-1981 wage index, which included data from federal government hospitals, for its 1982 and 1983 fiscal years plaintiff could have relied only on the 1981 wage index, which exempted data from federal government hospitals. In another sense, then, the 1984 repromulgation did not constitute an abrupt departure from prior practice, and was not a truly retroactive rule like the rule at issue in *Retail Union* was. I am not convinced that, as the Secretary argues, the 1984 repromulgation was necessary to fill a void in an unsettled area of the law. The Court need not decide this issue, however, as it believes that the other *Retail Union* factors suffice to support the Secretary's action.

The third factor, which is the extent to which the party against whom the new rule is applied relied on the former rule, weighs heavily in the defendants' favor. Courts deciding retroactivity issues have relied heavily on whether the affected party substantially relied on the former rule. *E.g., Retail Union,* 466 F.2d at 391–92 (noting that the affected party there at all times took every effort to conform its actions to the law); *Daughters of Miriam Center,* 590 F.2d at 1262 (noting that "[i]n a retroactivity challenge ... a critical question is how the challenger's conduct ... would have differed if the rule in issue had applied from the start"). In this case, I do not believe that plaintiff can demonstrate the requisite reliance interest. Plaintiff asserts that its reliance interest is based on the fact that it "brought this action challenging the Wage Index, relying on the reasonable prospect that it would, upon a successful challenge, obtain reimbursement under the prior regulation." *Plaintiff's Reply Brief* at 31. Significantly, however, plaintiff has not shown how its actions during its 1982 and 1983 fiscal years would have differed if the Court gives the 1984

repromulgation retroactive effect. It cannot, because the same rule applied during those years. This is different from the situation in *Retail Union,* where the employer's action would have been significantly different if the rule sought to be given retroactive effect there had been in force when the employer acted. The situation here is also different from the situation in *Georgetown University Hospital,* where the plaintiffs had received reimbursement under the pre–191 wage index, the district court had specifically ruled in their favor on the wage index issue, *and* the Secretary had stated in open court that he had no intention of "recouping the monies reimbursed to plaintiffs under the pre-existing wage index." Medicare and Medicaid Guide, ¶ 35,341, at 10,696. These factors are not present here.

The fourth factor is "the degree of the burden which a retroactive order imposes on a party." Here, the change in the wage index clearly imposed a burden on the plaintiff. That burden, however, resulted from the change in the wage index itself, and not solely from the Secretary's decision to repromulgate the index retroactively. I disagree with plaintiff, moreover, that "being deprived of reimbursement in the first instance is a heavier burden than having received reimbursement and merely being threatened with recoupment." *Reply Brief* at 32. Clearly, a party who has received a reimbursement may have already spent the money, and thus be unable to repay it. A party who was never reimbursed is not in a similar situation. The plaintiff has not convinced the Court, moreover, that the Secretary's application of the 1981 wage index to it was "unjust" in the sense that it deprived plaintiff of monies which it should have received under the Medicare Act. As I noted above, plaintiff does not challenge the substantive validity of the change in the wage index, and the Court believes, based on this record, that the Secretary was justified in making the change. In essence, there was in this case no former rule to which plaintiff had conformed its conduct during its 1982 and 1983 fiscal years, and granting the 1984 repromulga-

tion retroactive effect thus will not impose a substantial burden on it.

The final factor is whether the statutory interest justifies applying the new rule "despite the reliance of a party on the old standard." *Retail Union,* 466 F.2d at 390. Defendant argues that the 1984 wage index rule "furthers the statutory interest in limiting plaintiff's reimbursement to only those costs that are necessary in the efficient delivery of services." *Defendant's Reply Brief* at 26. As I noted above, plaintiff does not challenge the substantive validity of the wage index rule, and thus does not contest the Secretary's argument that the rule furthers the statutory interest of limiting reimbursable costs to those "that are necessary in the efficient delivery of services." Specifically, the rule furthers this interest by removing from the wage index data that skews the index. By contrast, in *Georgetown University Hospital* the plaintiffs in that case demonstrated that the new wage index *"less* accurately reflected their costs." Medicare and Medicaid Guide, ¶ 35,341, at 10,696. Plaintiff argues here, rather, that giving the 1984 repromulgation retroactive effect will not serve the interests underlying the APA. *Plaintiff's Reply Brief* at 32–33. I have already discussed that issue and will not repeat that discussion. Finally, and most importantly, the Court must balance the statutory interest to be served by applying the new standard against the plaintiff's reliance on the old standard. As I discussed above, plaintiff cannot establish the requisite reliance interest in this case. There thus is nothing for the Court to balance against the statutory interest that repromulgation of the wage index with retroactive effect serves.

In summary, the principal concern of retroactivity analysis is "lack of notice and the degree of reliance on former standards." *Retail Union,* 466 F.2d at 390 n. 22; *see also Daughters of Miriam Center,* 590 F.2d at 1260 (stating that " 'courts have generally compared the public interest in the retroactive rule with the private interests that are overturned by it' in deciding whether to uphold a retroactive promulgation ... because retroactive laws inter-

fere with the legally-induced and settled expectations of private parties to a greater extent than do prospective enactments"). In this case, plaintiff has established little, if any, lack of notice, reliance on former standards, or interference with legally-induced and settled expectations. The Court therefore concludes that the Secretary may retroactively apply the 1984 repromulgation of the wage index to plaintiff. I stress in conclusion that as I have implied throughout this opinion, I do not disagree with the decision of the district court in *Georgetown University Hospital.* I simply believe that this is a different case, with different facts that require a different result.

Since the Court has upheld the Secretary's decision to apply the 1984 repromulgation of the wage index retroactively, it does not have to address the other issues the parties have raised; specifically, those issues concerning the Court's jurisdiction over plaintiff's TEFRA and PPS claims, the validity of defendant's nonretroactive correction rule, and the relief to which plaintiff would have been entitled if it had prevailed on its challenge to the wage index. The Court will enter an order denying plaintiff's motion for summary judgment, granting defendants' motion to dismiss and/or for summary judgment, and entering judgment for the defendants.